400 So.2d 1280 (1981)
Tranquilino CASTRO, Appellant,
v.
FLORIDA JUICE DIVISION and Southern Fire Adjusters, Appellees.
No. UU-485.
District Court of Appeal of Florida, First District.
June 26, 1981.
Rehearing Denied August 4, 1981.
*1281 Ira J. Druckman, Miami, for appellant.
John F. McMath, Miami, for appellees.
ERVIN, Judge.
In this workers' compensation action, the claimant contends that the deputy commissioner erred in finding that the claimant's hypertension and obesity were not causally related to a foot injury which the claimant suffered in connection with a compensable accident. We agree and reverse that portion of the order which limited the recovery to a 25% permanent partial disability rating as to the foot injury only, and remand the case for reconsideration of the case as to the claims for temporary total disability, permanent total disability, or alternatively permanent partial disability in excess of the 25% rating, caused by claimant's increased hypertension following the accident.
The deputy based his finding limiting recovery upon evidence showing that the claimant had a prior history of hypertension and obesity. Notwithstanding such evidence, there was no medical or lay testimony revealing that the claimant's severe increase in blood pressure following the industrial accident was merely a natural progression of his disease, as opposed to an aggravation which was caused by the claimant's enforced inactivity due to the foot injury. Nor was there any evidence showing that the claimant's preexisting, asymptomatic hypertension had ever caused disability. Prior to his injury, the claimant's blood pressure had generally been consistently in the range of 150/100, and his weight approximately 250 pounds. In December, 1977, several months after the accident, the claimant was examined by Dr. Robles, who then observed that the claimant was nervous, depressed, and was having difficulty breathing. Dr. Robles further observed that "[h]e seemed like stunned, like he did not realize what was going on around him." At that examination, the claimant's blood pressure was 200/135 and his weight was 296 pounds. He was also found to be suffering from inflammation of the ankles. Dr. Robles placed claimant on a "very strict" diet and prescribed medication specifically for the hypertension. With this treatment the claimant's blood pressure temporarily decreased. However, on April 24, 1979, the claimant returned to Dr. Robles, complaining about different symptoms. He said he had intense headaches and that he was urinating approximately 45 times each night. A physical examination showed that his blood pressure was extremely high, 200/130 on his right side and 240/140 on his left side. Dr. Robles also noted that the claimant weighed 309 pounds on the April 24, 1979 visit. The claimant's condition thereafter did not improve and gradually worsened. Dr. Robles indicated that by September, 1979, the claimant had become very tired and very sleepy and had great difficulty breathing. Finally, by October 13, 1979, the claimant's condition had reached such dangerous levels that Dr. Robles decided to hospitalize him, resulting in his blood pressure and weight rapidly dropping to more reasonable levels.
The record then reveals a marked change in both claimant's condition and treatment following the accident, and, as such, indicates an aggravation of a preexisting disease within the ambit of Section 440.02(18), Florida Statutes (1977).[1] As to such *1282 conditions, it is generally recognized that "`an aggravation of [an] original injury is compensable if it is the direct and natural result of the compensable primary injury.'" Sosenko v. American Airmotive Corporation, 156 So.2d 489, 492 (Fla. 1963) (citing I Larson, Workmen's Compensation Law, § 13.11). While the necessary connection between the aggravated disease and the employment must be based upon a reasonable medical probability, Orange County Board of County Commissioners v. Breneman, 233 So.2d 377 (Fla. 1970), this requirement was met by the testimony of doctors Robles and Simon, the former opining that claimant's disability was a direct relationship between his enforced inactivity resulting from the accident, his weight gain, and the increase in his hypertension, the latter stating that the claimant's problems began after the decreased activity from the foot injury. Although other portions of their testimony were less emphatic as to their conclusions on causal relationship  i.e., that a relationship was "possible", and that there "could" have been a relationship  their testimony, when considered as a whole, indicated the requisite certainty to establish causation. See Florida State Employment Service v. Spathis, 9 FCR 182 (1973), cert. den., 317 So.2d 765 (Fla. 1975). See also, Walker v. McDonnell Aircraft Corporation, 231 So.2d 210 (Fla. 1970). Moreover, their medical opinions were no less satisfactory for their failure to use the magic words "reasonable medical certainty." See Town of Davie v. Cooper, IRC Order 2-3770 (April 16, 1979).
Chester v. Bake Lines Trucking, Inc., IRC Order 2-3625 (December 1, 1978), is instructive. There the IRC held that the deputy commissioner erred in finding no connection between an accident and cardiomyopathy when the only medical opinions in the case established an aggravation of a preexisting condition. Here, the medical testimony was likewise unrefuted.
Although a deputy commissioner's order does not have to state expressly that the testimony of a particular witness is not credible, see John Caves Land Development Company v. Suggs, 352 So.2d 44 (Fla. 1977), the deputy should offer a sufficient reason for rejecting expert medical testimony, especially if such testimony is unrefuted. See Cohen-Ager Inc. v. Pierce, IRC Order 2-3173 (June 2, 1977). No such explanation was given, nor does it appear that the deputy's implicit rejection is supported by the record.
Appellee's reliance on Hernandez v. DeCarlo, 116 So.2d 429 (Fla. 1959) and Crowell v. Messana Contractors, 180 So.2d 329 (Fla. 1965), for the proposition that the deputy commissioner has the discretion to reject medical testimony and make a finding based on lay testimony and his personal observation of the claimant, is misplaced as to the facts before us. Such evidence is not sufficient to establish a causal relationship between an accident and conditions which are not readily observable or discoverable without medical examination. See Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA, 1981). In Decks, Inc. of Florida v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980), we stated that "lay testimony is not sufficient to establish the causal relationship between the accident and conditions such as high blood pressure which are not readily observable or discoverable without medical examination."
Therefore, while we must credit the deputy's expertise in determining causation issues, see Hernandez v. DeCarlo, supra it is difficult for us to envision how his personal view of the claimant's foot could provide him with evidence supporting the finding that the claimant's hypertension was not related to his foot injury. Restated, if personal observation in this type of case cannot establish a causal relationship, then we cannot see how such evidence can establish a lack of such a relationship.
*1283 The deputy, in arriving at his conclusion of no causal connection, appears to have implicitly placed a stricter standard of proof on the claimant to establish a causal connection in an "aggravation" case. In providing compensation for aggravation of preexisting conditions under Section 440.02(18), the legislature has not imposed upon claimants seeking compensation for such conditions the same strictures it has upon claimants asserting disability caused by occupational diseases. Compare Section 440.151. Finally, there is no judicially created standard of proof applicable in the instant case, such as that in Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), and Sosenko v. American Airmotive Corporation, supra.
Reversed and remanded for further proceedings consistent with this opinion.
JOANOS, J., concurs.
BOOTH, J., specially concurs.
BOOTH, Judge, specially concurring:
I concur in the result reached by the majority remanding the cause for reconsideration of whether the claimant's increased hypertension was causally related to his compensable foot injury. However, I wish to emphasize the severity of claimant's initial injury, which incapacitated him for several months and nearly resulted in the loss of his foot. The claimant was hospitalized immediately after his right leg was caught in an orange juice press machine on the job. He suffered large lacerations and contusions extending into the muscles between his right knee and foot, including a deep laceration into his cuboid ankle bone. In addition, claimant sustained fractures of the cuboid bone and of the fibula bone between the knee and ankle. These injuries required immediate surgery to remove devitalized tissue and foreign matter and to repair severed ligaments and tendons, followed by a cast and further surgery several weeks later, then by prolonged swelling of the claimant's right foot and reduction of his normal activities. The causal connection between the initial injury and the dramatic increase in weight and hypertension is less tenuous when the serious initial injury and genuine forced incapacity resulting therefrom are considered.
NOTES
[1] An analogous theory of recovery was stated in Washburn v. Royal Castle Systems, Inc., IRC Order 2-3104 (March 31, 1977). There the IRC held the claimant was entitled to the treatment of a preexisting condition (obesity) if its continuing existence was retarding the process of recovery even though the claimant's preexisting obesity was not aggravated by her industrial accident. The case at bar presents an even stronger case than in Washburn in that the evidence here establishes that the claimant's industrial accident aggravated both his weight problem and his hypertension.