Argued and submitted July 20, reversed and remanded October 14, 1987

In the Matter of the Compensation of
Patricia M. Van Blokland, Claimant.

VAN BLOKLAND,
*Petitioner,*

*v.*

OREGON HEALTH SCIENCES
UNIVERSITY et al,
*Respondents.*

(83-06632; CA A42003)

743 P2d 1136

James L. Edmunson, Eugene, argued the cause for petitioner. On the brief were Karen M. Werner and Malagon & Moore, Eugene.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant seeks review of an order of the Workers' Compensation Board which affirmed the referee's award of an additional 35 percent unscheduled permanent partial disability of the low back, rejected claimant's contention that the claim had been prematurely closed and upheld SAIF's denial of payment for a weight loss program. On *de novo* review, we hold that the weight loss program is compensable and that the claim was prematurely closed.

Claimant is five feet six inches tall. Her weight has fluctuated from 234 pounds (in November 1981) to 300 pounds (in April 1983). She had compensable left knee surgeries in 1973, 1974, 1975 and 1976, which resulted in a total award of 25 percent permanent partial disability. In 1980, she re-injured the knee and was awarded an additional five percent permanent partial disability. Since at least October 1980, after she re-injured her knee, claimant's doctors have advised her to lose weight. In January 1982, she developed low back pain due to altered body mechanics caused by her unstable knee. In April 1982, Dr. Eckhardt, her treating physician, performed a discectomy, and claimant was awarded 10 percent unscheduled permanent partial disability for the low back.

In the spring of 1983, claimant's weight increased to 300 pounds. She enrolled in a weight loss program and lost 12 pounds. In November 1983, Eckhardt rated claimant's left leg impairment as moderate and her back impairment as "mildly moderate." In December 1983, her back pain worsened and she was hospitalized. In March, 1984, Eckhardt noted that claimant's obesity "contributes significantly to * * * her overall back disability" and that a well supervised weight reduction program probably would be the most important treatment claimant could receive. On June 21, 1984, Dr. Achterman[1] asked SAIF to approve claimant's enrollment in the Risk Factor Obesity Program, because "for a patient of this type this is the only sort of program which will work."[2] SAIF offered to place claimant in Weight Watchers, and Achterman agreed. Claimant attended Weight Watchers for eight weeks,

---

[1] Dr. Achterman became claimant's treating physician after Eckhardt retired.

[2] The Risk Factor Obesity Program is a highly structured and supervised weight loss program. The program accepts patients only on referral by a physician.

lost 15 pounds and then stopped attending, because she was "no longer motivated" by the program.

In May 1985, Achterman and Dr. Misko both recommended the Risk Factor Obesity Program. Misko termed the program "essential" to claimant's recovery. In June 1985, Orthopaedic Consultants examined claimant and concluded that she was medically stationary but that she should lose weight and that surgery was not indicated. On July 8, Misko repeated his request that SAIF enroll claimant in the Risk Factor Obesity Program.

In January 1986, Misko reported that claimant was not medically stationary, because "I believe the Risk Factor Obesity Clinic is reasonable and necessary, and following her obtaining reasonable weight and if [she] still at that time complains of back and leg pain that surgery would be indicated." Achterman wrote that claimant "is in definite need of treatment which can be offered through the Risk Factor Obesity Clinic."

"It is my considered opinion that this patient is in definite need of treatment which can be offered through the Risk Factor Obesity Clinic. I do not feel that it is likely that this patient will benefit from a surgical exploration of her disc, until she has lost considerable weight. I would put the required weight loss in the range of 80-100 pounds.

"Both Dr. Misko and I feel that in order to have any understanding as to the overall need for surgery in this patient, that the weight should be lost first. It may well be that with successful weight loss, that this patient would not be in need of the surgery which has been proposed."

The first issue is whether the weight loss recommended by the doctors is a compensable medical service under ORS 656.245(1), which provides, in part:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires."

SAIF argues that it is not liable for the weight loss program, because claimant's obesity is not a result of her injury. SAIF's contention that the "condition" in question is obesity is incorrect. The conditions intended to be ameliorated by the obesity program are claimant's compensable injuries. Although it is

true that the purpose of the Risk Factor Obesity Program is to help claimant lose weight, the program will also aid her in recovering from the compensable injuries and may avoid the need for surgery.

In *Williams v. Gates, McDonald and Company,* 300 Or 278, 709 P2d 712 (1985), the court held that, when two operations were required to treat a compensable injury, long-term, post-operative consequences of one of the operations were compensable, even though they resulted from an operation that the claimant *should* have had if she had never been injured. 300 Or at 281. The court focused on two factors: first, whether there was any indication that claimant *would* have had the operation that she should have had; and, second, whether both operations were required for total medical treatment.

Although *Williams* is not controlling in this case, it is instructive. There is no indication that claimant would have enrolled in the Risk Factor Obesity Program unless she had been injured, even though she was obese and her doctors had advised her to lose weight. Although Orthopaedic Consultants had declared her medically stationary, all the medical evidence indicates that she must lose considerable weight to recover. In other words, weight loss is required for total medical treatment.

Claimant is entitled to treatment for the disabling results of a compensable injury, even if pre-existing and continuing obesity contributes to the disability. *See Taylor v. SAIF,* 75 Or App 583, 586, 706 P2d 1023 (1985); *Hoffman v. Bumble Bee Seafoods,* 15 Or App 253, 254, 515 P2d 406 (1973). The compensable injury need not be the sole cause or the most significant cause of the need for treatment, but only a material contributing cause. *Jordan v. SAIF,* 86 Or App 29, 738 P2d 588 (1987); *see Lobato v. SAIF,* 75 Or App 488, 706 P2d 1025 (1985). The treatment must be reasonable and necessary. *Wait v. Montgomery Ward, Inc.,* 10 Or App 333, 335, 499 P2d 1340 (1972). We hold that claimant has shown by a preponderance of the evidence that the Risk Factor Obesity Program is a compensable medical treatment.

The next issue is whether the Board prematurely closed the claim. The evidence is persuasive that claimant's condition will improve if she loses significant amounts of

weight. The proposed weight loss treatment program is curative and not palliative. *See Schuening v. J. R. Simplot & Company,* 84 Or App 622, 735 P2d 1, *rev den* 303 Or 590 (1987). It will not be possible to determine the extent of the disability until she has had the treatment. The claim was prematurely closed.[3]

Reversed and remanded with instructions to set aside denial of the weight loss program payment and to reopen the claim.

---

[3] Because we conclude that the claim was prematurely closed, we need not reach claimant's alternative assignments of error.