Glen WENDEL, Claimant and Appellee,

v.

**DOMESTIC SEED & SUPPLY,**
Employer and Appellant,

and

Continental Western Insurance Co.,
Insurer and Appellant.

No. 16504.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1989.

Decided Sept. 6, 1989.

Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer, insurer and appellant.

Richard J. Helsper of Erickson, Helsper & O'Brien, P.C., (Terry D. Wieczorek, on brief), Brookings, for claimant and appellee.

SABERS, Justice.

Domestic Seed & Supply (Domestic) appeals a circuit court judgment affirming the South Dakota Department of Labor's (DL) decision awarding Glen Wendel (Wendel) workmen's compensation benefits based on a finding of permanent and total disability.

### Facts

On September 22, 1981, Wendel suffered a severe back injury while working for Domestic. Domestic's workmen's compensation carrier, Continental Western Insurance Company (Continental), paid benefits for a twenty percent permanent, partial disability. On January 22, 1985, Wendel requested a hearing with DL for a determination that he be found permanently and totally disabled.

A hearing was held on June 16, 1986. Evidence at the hearing showed that following his injury, Wendel had two discs surgically removed from his spinal column. Wendel suffered from immense pain before and after the surgery. He received physical therapy and a nerve block, but neither improved his condition or relieved the pain. Wendel testified that severe pain limited most of his activities, and those he could perform were only for short periods of time. He testified that he slept only two to three hours per night because of the pain resulting from being in one position too long. He also testified that he could sit for only ten to fifteen minutes at a time or walk for fifteen to twenty minutes at a time.

Dr. Frank Alvine (Dr. Alvine), Wendel's treating physician, testified by deposition. Dr. Alvine rated Wendel as having a thirty-five percent permanent, partial disability of the whole person. He testified that Wendel complained of immense pain and numerous pain killers prescribed for Wendel did not seem to help. Dr. Alvine eventually limited Wendel to lifting no more than fifteen pounds. He testified that he believed there may be jobs available which Wendel

could perform, but he did not know of any specific ones. Dr. Alvine sent Wendel to numerous physicians for other opinions, but these attempts were unsuccessful in improving Wendel's condition. Dr. Kelly from the Mayo Clinic in Rochester, gave Wendel a fifteen percent permanent, partial disability of the whole person.

Paul Irwin (Irwin), a vocational rehabilitation counselor with the South Dakota Department of Vocational Rehabilitation (DVR), also testified at the hearing. Beginning in May 1985, Irwin met with Wendel several times, met with Wendel's doctors, and reviewed Wendel's medical records. Irwin testified that he believed Wendel could not be rehabilitated or become employable because of his disability and pain. He also testified that he did not believe Wendel could be assisted by any vocational rehabilitation program. Based on Wendel's physical condition, education, work experience and training, Irwin did not believe there were employment opportunities available in Madison, where Wendel lived. Irwin placed Wendel on an extended evaluation period so vocational rehabilitation would be attempted if Wendel's pain subsided within eighteen months.

Dave Knudson (Knudson), a former counselor with DVR, testified at the hearing on behalf of Domestic and Continental. He believed there were jobs available in Madison which Wendel could perform. He provided a list of several jobs such as a store clerk, security guard, and gas station attendant.

The hearing examiner decided Wendel was not totally disabled. He further found that Continental had paid benefits equal to a thirty-five percent disability rating, which he considered to be payment in full. Finally, the hearing examiner found that Wendel was a candidate for rehabilitation and a program of rehabilitation should be undertaken to secure full-time employment for Wendel. The hearing examiner's order was entered on October 16, 1986. Wen-

del's attorney received a notice of entry of order which was sent on October 21, but did not receive the order until October 27 because it was improperly addressed.

On October 27, Wendel filed a petition, pursuant to SDCL 62-7-16, seeking review of the Hearing Examiner's decision. Wendel's attorney also sent a letter to the Secretary of DL, Julie Johnson (Johnson), requesting that the petition for review be granted. This letter stated in part that Wendel wished to retake the deposition of Dr. Alvine who had reached the conclusion that Wendel was not employable. Domestic filed a motion to deny the petition for review claiming that it was untimely.[1] Even though Johnson had not yet ruled on the petition for review, Wendel filed a notice of appeal to the circuit court on November 14, apparently to avoid a claim that an appeal to the court had not been made within thirty days, as required by SDCL 1-26-31.

On November 24, Johnson granted Wendel's petition for review and ordered a hearing limited to the issues of Wendel's disability status and his ability to benefit from vocational rehabilitation. On December 8, Wendel moved to hold the court appeal in abeyance pending the outcome of the rehearing. The circuit court subsequently dismissed Wendel's appeal for lack of jurisdiction on the basis that the petition for review prevented DL's decision from being final.

A hearing was held before a different hearing examiner on September 18, 1987. Irwin testified that at the end of the eighteen-month evaluation period, his opinion that Wendel was not a candidate for vocational rehabilitation had not changed nor was he aware of any jobs in Madison which Wendel could perform given his disability, education, training, and skills. Irwin testified that in his meetings with Wendel after the initial decision by DL he covered the points stressed by DL for rehabilitation.

---

1. SDCL 62-7-16 provides that the petition for review must be filed within ten days after the entry of an order. Domestic claimed that the notice of review was not filed within ten days as the order was entered on October 16 and Wen-

del did not file a petition for review until October 27. However, as indicated above, the order was not received until October 27, preventing an earlier filing.

His efforts were unsuccessful and Wendel's pain appeared to have worsened. Consequently, Wendel's file was closed after the eighteen-month evaluation period.

James Carroll (Carroll), assistant supervisor at the Sioux Falls office of DVR, also testified at the rehearing. He stated that he became involved in the case at Irwin's request. Carroll reviewed Wendel's file and met with him on May 27, 1987. He testified to his opinion that Wendel was not capable of benefitting from a vocational rehabilitation program because of the disability and severe pain. He believed Wendel was totally disabled and did not know of any job which Wendel could perform. Carroll also testified that, prior to his interview with Wendel and without Wendel's knowledge, he observed Wendel attempting to get a drink of water. Carroll stated that Wendel was in obvious pain while attempting to bend over a water fountain and it took Wendel approximately two to three minutes to obtain a drink.

Wendel testified at the hearing that the pain continued and his condition had not improved, although he continued physical therapy. He stated that since the original hearing, Dr. Alvine advised him he would not benefit from a pain clinic. He said he applied with the Career Learning Center in Madison, but they would not accept him into their program because they did not believe he could be helped or that anyone would hire him.

Knudson again testified at the hearing. He believed Wendel would benefit from a pain clinic and that over time his condition would improve so he would be employable. This belief was based on Knudson's conversation with a doctor from the University of South Dakota who was involved with a pain clinic. This doctor had not examined Wendel.

The hearing examiner reversed the original decision of DL and found Wendel to be totally and permanently disabled. He also found that Wendel was not a candidate for vocational rehabilitation.

Domestic and Continental appealed DL's decision to the circuit court. The circuit court affirmed DL's decision on several issues, but remanded the decision to DL because Johnson did not enter findings and conclusions in support of her order for a review hearing. Johnson was no longer Secretary of DL, however, so a hearing was held before the circuit court in which Johnson testified as to the reasons she granted Wendel's petition for review and ordered a second hearing. Following the circuit court hearing, the court affirmed DL's decision. Domestic and Continental appeal.[2] We affirm.

1. *Whether DL retained jurisdiction of the petition for review after the filing of a notice of appeal to the circuit court.*

■ Domestic claims that DL's jurisdiction over this matter terminated when Wendel filed a notice of appeal to the circuit court. Accordingly, Domestic claims DL was without authority to conduct a second hearing.

Domestic cites several cases which hold that an administrative agency's or trial court's jurisdiction to reconsider or change an order or judgment ceases after a valid appeal is made. *E.g., Stearns–Hotzfield v. Farmers Ins. Exchange,* 360 N.W.2d 384 (Minn.Ct.App.1985); *In re Petition of City of Shawnee,* 236 Kan. 1, 687 P.2d 603 (1984); *In re Appeal of Bidlack,* 3 Ohio App.3d 351, 445 N.E.2d 722 (1982); *Harwood v. Harwood,* 283 N.W.2d 144 (N.D. 1979).[3] These cases are distinguishable, however, in that they require a valid appeal before an agency's or trial court's jurisdiction ceases. In this case there was no valid

---

**2.** Both appellants are referred to hereafter as "Domestic."

**3.** Domestic also cites *In re D.H.,* 354 N.W.2d 185, 192 (S.D.1984), which states: "The general rule is that appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order, except as to certain trivial matters, and this court then has

jurisdiction until determination of the appeal." However, in *D.H.,* the petition for a hearing was filed after the notice of appeal was filed, *whereas* the petition for review here was filed prior to the notice of appeal. Furthermore, the appeal in *D.H.* was a valid appeal as it was made from a final order.

appeal because the appeal was not from a final order of DL. SDCL 62–7–19 provides:

> Any employer or employee may appeal to the circuit court pursuant to chapter 1–26 from any *final order or decision* of the department of labor which arises under the provisions of this title.

(emphasis added). In other words, no appeal may be had until DL enters a final order or decision and no decision may be considered final while a petition for review is pending. As explained by SDCL 62–7–18:

> If a petition for a review is filed as provided in § 62–7–16, it shall not be deemed that the department has made a final decision until there is a final determination on such petition, and such final determination shall in that event be deemed the final decision of the department and subject to appeal.

Once Wendel filed his petition for review, no appeal could be made to the circuit court until after a final determination on the petition. Since Wendel filed his petition for review prior to the time he filed the notice of appeal, and DL had not made a decision on that petition before the appeal was filed, Wendel's appeal was invalid. Consequently, DL retained jurisdiction.

■ Domestic also claims that by filing a notice of appeal Wendel waived his petition for review. Domestic relies on *Hulsing v. Iowa Nat'l Mut. Ins. Co.*, 329 N.W.2d 5 (Iowa 1983), in which a plaintiff filed a motion to vacate a trial court judgment and for a new trial. Approximately one month later Hulsing filed a notice of appeal. The *Hulsing* court held that the appeal operated as a waiver of the motion. *Hulsing* is easily distinguishable, however, as Hulsing's right to appeal was in no danger of expiring, whereas Wendel's right to appeal was conceivably on the verge of expiring when he filed his notice of appeal. Wendel could reasonably foresee a situation in which his right of appeal would expire because one basis for Domestic's motion to deny Wendel's petition of review was a claim that it was untimely. Wendel was aware of our decision in *Madsen v. Preferred Painting Contractors*, 89 S.D. 397,

233 N.W.2d 575 (1975), which held that the time for perfecting an appeal to the circuit court, where there is an untimely petition for review, runs from the date of the department's decision, not from the date of the secretary's denial of the petition for review. Since DL's order was entered on October 16, Wendel felt he had no choice but to file a notice of appeal on November 14 (within thirty days) to protect his right of appeal in the event DL determined the petition for review was untimely. Under these circumstances, Wendel's filing of a notice of appeal was not a waiver of the petition for review.

2. *Whether the Secretary abused her discretion in granting a petition for review.*

■ Domestic claims that Johnson, as Secretary of DL, should not have granted the petition for review as there was no new and substantial evidence to review. Domestic argues that the sole reason Johnson granted the petition for review was Wendel's letter stating that he planned to retake Dr. Alvine's deposition. Since this was not done, Domestic argues the petition was improperly granted.

The granting of a petition for review is governed by SDCL 62–7–16, which provides in pertinent part:

> Upon the filing of [a petition for review] the secretary may in his discretion either deny such petition or direct that further hearing be had or additional evidence received, and in the event of such further hearing or of the receipt of additional evidence he may revise his decision in whole or in part or affirm the same.

■ The statute grants the Secretary broad discretion in determining whether to grant a petition for review. Contrary to Domestic's claim, the statute does not require new and substantial evidence for the Secretary to grant the petition for review. While the Secretary's discretion is not unlimited, as recognized by the circuit court, Johnson did justify her decision in accordance with the statute. At the remand hearing, Johnson gave three reasons for granting the petition for review: 1) internal problems within DL at that time whereby

some decisions were not being adequately reviewed; 2) the decision seemed inconsistent with the evidence presented; 3) the letter from Wendel's counsel stated there may be new evidence to review. Her testimony disputes Domestic's claim that the sole reason the petition was granted was Wendel's letter stating he planned to retake Dr. Alvine's deposition. Although new deposition evidence was not received from Dr. Alvine, new deposition evidence was received concerning rehabilitation. In addition, either of the other two reasons were valid, and it was not an abuse of discretion to grant the petition for one or all three of the reasons.

3. *Whether new and substantial evidence must be presented at a review hearing to reverse the previous hearing examiner's findings.*

■ Domestic claims that once a decision has been made by DL, that decision may not be modified or reversed unless new and substantial evidence is presented. Domestic argues that to allow a new decision without new and substantial evidence would allow a reversal of an original decision simply because a new hearing examiner takes over the file. Domestic cites *State, Div. of Human Rights ex rel. Miller v. Miller,* 349 N.W.2d 42 (S.D.1984), to support its argument. That case is inapplicable as it involved the interpretation of SDCL 1–26–34, whereas the question here is the interpretation of SDCL 62–7–16. Domestic is also in error in that some evidence *was* presented.

Under SDCL 62–7–16, the original decision may be completely reversed upon argument at a hearing without any additional evidence. SDCL 62–7–16 provides in part, "... in the event of *such further hearing* or of the receipt of additional evidence he may revise his decision in whole or in part or affirm the same." (emphasis added). The statute does not require additional evidence to reverse the original decision.

4. *Whether DL's finding of total and permanent disability was clearly erroneous.*

■ Domestic claims DL erred in finding that Wendel was totally and permanently disabled because Wendel failed to meet his burden to show a total and permanent disability. Domestic argues there was evidence of jobs in the community of Madison which Wendel could perform. Domestic further argues that Wendel was given a thirty-five percent permanent, partial disability rating by Dr. Alvine and this disability did not prohibit Wendel from other minimum wage jobs.

We have stated that:

[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income. (Brackets in original).

*Hanson v. Penrod Constr. Co.,* 425 N.W.2d 396, 398 (S.D.1988) (*quoting Schulte v. C.H. Peterson Constr. Co.,* 278 Minn. 79, 153 N.W.2d 130, 133–34 (1967)). *See also Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417 (S.D.1982). Under this "odd-lot" test, the claimant has the burden to make a prima facie showing that his physical impairment, mental capacity, education, training, and age place him in an odd-lot category. *City of Casper v. Bowdish,* 713 P.2d 763 (Wyo.1986); *Guyton v. Irving Jensen Co.,* 373 N.W.2d 101 (Iowa 1985); 2 A. Larson, *The Law of Compensation* § 57.51(a) (1986). The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant. *Guyton, supra; The Law of Compensation, supra.*

■ In this case, evidence at both hearings showed that the combination of Wendel's disability and pain in conjunction with his age, training, and experience, prevented him from securing employment. At the second hearing, Irwin and Carroll both testified that after eighteen months of monitoring Wendel, they determined vocational rehabilitation would not be helpful and Wendel's case was closed. The evidence at the second hearing showed that his ability to sit or stand for any length of time appeared to have worsened. The evidence at both hearings was that Dr. Alvine did not believe a pain clinic would be beneficial to Wendel. In addition, there was evidence

that the Learning Center would not accept Wendel because they did not believe anything could be done for him and no one would hire him. This evidence was sufficient to establish a prima facie case of permanent and total disability.

■ Domestic attempted to rebut this prima facie case through the testimony of Knudson. DL apparently rejected Knudson's testimony that Wendel was not totally and permanently disabled. The fact finder may properly weigh the evidence and determine the credibility of the witnesses. *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979); *see also Barkdull, supra.* We cannot say DL was clearly erroneous in determining Wendel was permanently and totally disabled.

5. *Whether rehabilitation services should have been provided before determining Wendel was totally and permanently disabled.*

■ Domestic claims Wendel should have received vocational rehabilitation before he was determined to be totally and permanently disabled. Domestic claims there may be jobs for which Wendel could qualify if he entered a vocational rehabilitation program.

Irwin and Carroll both testified that Wendel is totally and permanently disabled. They further testified that Wendel was not a candidate for rehabilitation and no rehabilitation would assist him to become gainfully employed. In fact, over the eighteen-month period during which Irwin met with Wendel, Irwin believed that Wendel's condition actually worsened and ultimately closed his file. Domestic has not offered any alternative to DVR that could assist Wendel. The failure or inability to provide an alternative program and the conclusion of DVR representatives support DL's finding that Wendel is not a candidate for vocational rehabilitation.

Affirmed.

All the Justices concur.