**Thurman F. RANK, Claimant and Appellee,**

v.

**Dan LINDBLOM, Employer and Appellant,**

and

**Traveler's Insurance Company, Insurer and Appellant.**

**Nos. 16924, 16940.**

Supreme Court of South Dakota.

Considered on Briefs May 22, 1990.

Decided July 25, 1990.

Mitchell C. La Fleur of La Fleur, La Fleur & La Fleur, Rapid City, for claimant and appellee.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for employer and appellant, insurer and appellant.

MILLER, Justice.

In this worker's compensation case we affirm the circuit court and hold that (1) the Department of Labor was not clearly erroneous in finding claimant permanently and totally disabled, and (2) Department erred in holding employer/insurer liable for preoperative medical care for a preexisting illness not related to the compensable injury.

## FACTS

Essentially, the facts surrounding claimant's injury are not in dispute. He began working on employer's ranch near Rapid City, South Dakota, sometime in 1980 or 1981. His duties consisted of general ranch work: haying, feeding cattle, etc.

On claimant's 65th birthday, December 31, 1986, while feeding approximately 300 calves, he was injured when they stampeded and ran over him. As a result, his knee was injured. He was taken to and treated at the emergency room of the local hospital. Fluid was drained from underneath the kneecap. He was then given a knee brace and instructed to use crutches. He was advised to go home and stay off the knee.

On January 5, 1987, claimant saw Dr. David Boyer, an orthopedic surgeon. Dr. Boyer x-rayed his knee and informed him that the cartilage had been torn. Dr. Boyer saw claimant again on January 26, 1987, at which time the condition of the knee was improving. On February 9, 1987, Dr. Boyer met with claimant and recommended a knee joint replacement to relieve claimant's pain. Claimant was scheduled for such surgery on April 1, 1987.

Prior to surgery, it was discovered that claimant was experiencing some pulmonary problems. Dr. Boyer testified that he did not feel that the knee surgery would be safe without first treating this condition. The pulmonary care was under the direction of Dr. Bill Howard, who determined that claimant "had significant lung disease, manifested by elements of bronchitis, asthma and also emphysema, and that this had resulted in a significant low blood oxygen level." Dr. Howard testified that claimant's condition would have increased the risk of post-operative complications had the knee surgery been performed prior to treating the pulmonary problems. Claimant's pulmonary condition was treated and improved to a degree where the knee surgery could be performed.

Ultimately, the knee surgery was performed and Dr. Boyer testified that it went "fine." Claimant continued consulting with Dr. Boyer after the surgery. Dr.

Boyer testified that claimant progressed as expected. He saw claimant on a periodic basis through March, 1988. He testified that although claimant was able to walk, he did experience some discomfort in his knee (described as fatigue-type pain), but the type of pain he had experienced before surgery had subsided, although he did have a limp.

On March 3, 1988, claimant filed a petition with Department seeking worker's compensation benefits. Department concluded that claimant was entitled to compensation for permanent total disability and further awarded him the costs incurred for the preoperative treatment performed by Dr. Howard. The circuit court affirmed Department's award of permanent total disability but reversed on the issue of costs incurred for the preoperative treatment. We affirm.

## SCOPE OF REVIEW

When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. *Matter of Change of Bed Category of Tieszen*, 343 N.W.2d 97 (S.D.1984); *Nash Finch, Co. v. S.D. Dept. of Rev.*, 312 N.W.2d 470 (S.D.1981). When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous. *Matter of S.D. Water Mgmt. Bd.*, 351 N.W.2d 119 (S.D.1984); *State Div. of Human Rights v. Miller*, 349 N.W.2d 42 (S.D.1984).

*Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113, 116 (S.D.1987) (citing *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130, 132 (S.D.1984)); *see also Hanson v. Penrod Const. Co.*, 425 N.W.2d 396 (S.D.1988).

■ We review the administrative agency's decision the same as did the circuit court. We do not substitute our judgment for that of the agency on the weight of evidence pertaining to questions of fact unless clearly erroneous or characterized by an abuse of discretion. *Lawler v. Windmill Restaurant*, 435 N.W.2d 708 (S.D.1989) (Henderson, J., dissenting); *Lee v. South Dakota Dept. of Health*, 411

N.W.2d 108 (S.D.1987) (Henderson, J., concurring in result).

## DECISION

### ISSUE I

WHETHER DEPARTMENT CLEARLY ERRED IN FINDING CLAIMANT PERMANENTLY AND TOTALLY DISABLED.

■ Recently, in *Wendel v. Domestic Seed & Supply*, 446 N.W.2d 265 (S.D.1989), we reiterated our holding in *Barkdull v. Homestake Min. Co.*, 317 N.W.2d 417 (S.D. 1982):

> [A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and *the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.* (Brackets in original.) (Emphasis added.)

446 N.W.2d at 270. *See also Hanson, supra*. The claimant has the burden of proof to make a prima facie showing that his physical impairment, mental capacity, education, training, and age place him in the odd-lot category. *Wendel, supra;* 2 Larson, *Workmen's Compensation Law*, § 57.51(a) (1986). The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to claimant. *Id.*

Employer/insurer argue that Department's finding that claimant was permanently and totally disabled is clearly erroneous. They state that the proper test for such a determination is "whether [claimant's] injury (in combination with the other factors) prevents him from working at *all available types of employment* which could bring him an income on anything more than a sporadic basis resulting in an insubstantial income." (Emphasis in original.) We disagree.

Employer/insurer's statement of the test would make available a much wider range of employment than was intended in *Barkdull* and its progeny. Proof that jobs exist which claimant can perform will not satisfy the employer's burden. The test is more restrictive. The focus is on employment available in the community where the claimant is already residing. *See Wendel, supra; Hanson, supra;* and *Barkdull, supra.* There must be positions actually open providing claimant with the opportunity to work. *See Bumble Bee Seafoods v. Director, Office of Wkrs.'*, 629 F.2d 1327 (9th Cir.1980).

Employer/insurer claims that the testimony of the experts does not support a finding of permanent total disability. They claim that jobs were reasonably available to claimant. Specifically they direct our attention to the testimony of Dr. Boyer wherein he stated, "I don't think he's totally disabled from all types of work." In contrast, one of the comments made in Dr. Boyer's medical record regarding claimant's medical history is, "I think his knee is at a plateau. It clearly is not good enough that he can work full time. I think either he ought to be on a limited duty basis or not work at all." One of the reports submitted by Dr. Boyer indicates that in his opinion claimant has a seventy percent impairment to the lower left extremity and twenty percent impairment of the whole man.

Employer/insurer also direct our attention to the testimony of Otto Kaul, a rehabilitation counselor. Specifically, we note that Kaul did not disagree with Dr. Boyer's opinion that claimant was not totally disabled from *all* types of work. However, he further testified that in his opinion, taking into consideration claimant's age, limited education, labor experience, physical limitations, lack of transferable job skills, and his poor aptitude test, that he is not employable in the regular job market on a consistent basis. He also testified that vocational rehabilitation would not be beneficial. Kaul testified that there were no jobs in the area, *i.e.*, Rapid City, in which he could work and earn a living. Kaul even testified that he did not think claimant could do sedentary work at home for eight hours per day. (Both Kaul and Dr. Boyer testified that claimant had trouble sitting, standing or walking for any lengthy period

of time.) He specifically opined that claimant was not employable. He also testified that claimant is "totally and permanently disabled from work in the regular labor market."

Thomas Karrow, a vocational consultant, testified for employer/insurer. Karrow conducted a study and evaluation of claimant. In his opinion, claimant was not totally incapacitated and is employable. He testified that jobs have existed and will exist for someone with claimant's physical and vocational abilities. Karrow identified specific jobs in the Rapid City area which he felt claimant could perform, however, no openings were presently available.[1] In fact, Karrow testified that he was unsure whether some of the jobs he identified could be found in the Rapid City area.[2] He admitted on cross-examination that he told claimant that "it was going to be difficult to identify suitable employment for him."

The trier of fact in this case, Department, is free to accept all, part, or none of an expert's opinion. *Hanson, supra.* We have reviewed the testimony of all the experts and hold that Department was not clearly erroneous in finding claimant to be permanently and totally disabled. *See Wendel, supra; Larson, supra.*

## ISSUE II

WHETHER CLAIMANT WAS ENTITLED TO REIMBURSEMENT OF PREOPERATIVE MEDICAL EXPENSES FOR A PREEXISTING ILLNESS.

■ Generally, an "employer cannot be charged with the cost of repairing various non-work related conditions that are discovered in the course of treatment or surgery for a compensable condition." 2 Larson, *Workmen's Compensation Law,* § 61.13(e) (1987). *See also Quality Wood Products Corp. v. Indus. Com'n,* 97 Ill.2d 417, 73 Ill.Dec. 571, 454 N.E.2d 668 (1983) (employer was not required to pay hospital bill for non-compensable injuries including pulmonary emboli, heart disease, and hallucinations due to alcohol withdrawal); and *Matter of Compensation of Brooks,* 55 Or. App. 688, 639 P.2d 700 (1982) (employer held not liable for the costs of exploratory surgery where a symptomatic idiopathic condition was discovered and operated on which was unrelated to a compensable knee injury).

Dr. Howard's testimony clearly indicates that claimant's pulmonary problems have existed for quite some time and are not the result of his knee injury. Department approved these medical expenses holding that they were necessary and properly incurred pursuant to SDCL 62–4–1,[3] in order to provide the claimant relief from his injuries. The circuit court reversed, stating:

There may be instances where preoperative care must be covered under workers' compensation insurance, such as in emergency situations or where the treatment for nonwork related disease would be unnecessary but for the work related injury. It is important in this case, however, to note that although the preoperative care administered here was for the specific purpose of preparing Rank for surgery, Rank had significant disease

---

1. Additionally, when visiting with these potential employers about claimant, Karrow would leave out significant pieces of information regarding claimant's abilities, *e.g.,* he failed to tell them that claimant experiences continuous discomfort and pain in his knee, and he did not inform them that claimant could not sit or stand for an extended period of time.

2. Pursuant to questioning on cross-examination, claimant's counsel asked Karrow, "[i]sn't the real question whether [claimant] can find work in this area?" Karrow responded, "Yes."

3. SDCL 62–4–1, in effect at that time, provided:
   The employer shall provide *necessary first aid, medical, surgical, and hospital services, or other suitable and proper care* including medical and surgical supplies, apparatus, artificial members and body aids during the disability or treatment of an employee within the provisions of this title. Repair or replacement of damaged prosthetic devices, hearing aids, prescription eyeglasses, eyeglass frames, contact lenses and dentures shall be considered a medical service, under this section, if such devices were damaged or destroyed in an accident which also causes other injury which is compensable under this law. The employee may elect to secure his own physician, surgeon, or hospital services at his own expense. (Emphasis added.)

that should have been treated regardless of impending surgery.

We agree with the rationale of the trial court. Clearly, there was no emergency surrounding claimant's knee injury at the time he was treated by Dr. Howard. His knee injury and the pulmonary problems were separate and distinct physical conditions, neither of which was of an emergent nature requiring immediate medical attention. Under the facts of this case, it was improper to award the preoperative medical expenses.

Affirmed.

MORGAN, HENDERSON and SABERS, JJ., concur.

WUEST, C.J., concurs in part and dissents in part.

WUEST, Chief Justice (concurring in part and dissenting in part).

I concur with the majority on Issue I, but, would reverse the trial court on Issue II. In my opinion, the Department was not clearly erroneous in finding the claimant was entitled to the medical expenses to treat his pulmonary problem so he could stand the operation on his knee. The Department should have been affirmed on both issues.