Steven D. KRIER, Appellee,

v.

JOHN MORRELL & COMPANY, Appellant.

No. 17209.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1991.

Decided Aug. 7, 1991.

en lighter duty work, but his knee did not improve. Krier began to gain weight. Testimony established he gained weight because the knee injury caused his life to become more sedentary but did not change his eating habits. Krier's knee continued to deteriorate despite four corrective knee surgeries. Employer eventually terminated Krier for alleged misconduct. Krier continued to gain weight and eventually reached 260 pounds.

Dr. William Watson, his authorized treating physician, determined that weight-loss was necessary before the knee could recover. He decided that Krier had two options; a total knee replacement or weight-loss that might aid in recovery of the knee. In December, 1988, Doctor Watson prescribed a physician-supervised weight-loss plan (Opti–Fast). Krier was back down to approximately 195 pounds by June of 1989. Department entered an order for Employer to pay the costs of the weight-loss program ($1873.28) under SDCL 62–4–1.[1] Employer appealed and the circuit court affirmed. Employer initiated this appeal.

## ISSUE

We are not confronted with the compensability of Krier's knee injury. Rather, the only issue is: Does Employer have an obligation to reimburse Krier for the costs of the weight-loss program prescribed by his treating physician.

## DECISION

■ This case is unlike prior cases involving necessary treatment arising out of conditions which existed before the worker's compensable injury. *See, e.g., Rank v. Lindblom,* 459 N.W.2d 247 (S.D.1990). This case involves a condition that arose after and because of the compensable injury to Krier's knee.

■ Treatment which becomes necessary because the worker's compensable injury is aggravated by medical or surgical treatment may be compensable. *See gen-*

Steven D. Krier, pro se.

Michael S. McKnight, David J. Vickers of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellant.

HENDERSON, Justice.

John Morrell & Company (Employer) appeals from a circuit court judgment affirming a Department of Labor (Department) order that Employer reimburse Steven D. Krier (Krier) for a weight-loss program. We affirm.

## FACTS/PROCEDURAL HISTORY

When Krier began to work with Employer in 1979 he weighed approximately 195 pounds. After about six months on the job, he suffered an injury to his left knee which was determined to be compensable under worker's compensation. He was giv-

---

1. SDCL 62–4–1 provides, in pertinent part:
The employer shall provide necessary first aid, medical, surgical, and hospital services, or other suitable and proper care including medical and surgical supplies, apparatus, artificial members and body aids during the disability or treatment of an employee within the provisions of this title.

*erally,* 1 Larson, Workmen's Compensation Law § 13.21(a). Various cases have also held that treatment of a drug or alcohol addiction may be compensable when the addiction is caused by the treatment of the worker's compensable injury. 1 Larson, at § 13.21(e).. Such holdings are in keeping with the universally accepted concept that worker's compensation laws are to be liberally construed. *Wilcox v. City of Winner,* 446 N.W.2d 772, 775 (S.D.1989). With this rule of liberal construction in mind and recognizing past precedent on the specific statute in question, we cannot say that a medically necessary weight-loss program is never compensable. Various courts have ordered an employer to pay for weight-loss programs *in appropriate circumstances. Van Blokland v. Or. Health Services U.,* 87 Or.App. 694, 743 P.2d 1136 (1987); *Primous v. Flagler Systems, Inc.,* 477 So.2d 1057 (Fla.Dist.Ct.App.1985); *Castro v. Florida Juice Division,* 400 So.2d 1280 (Fla.Dist.Ct.App.1981).

Krier's treating physician prescribed the Opti–Fast weight-loss plan in an effort to alleviate the stress on Krier's deteriorating knee. This Court has specifically stated, concerning SDCL 62–4–1:

> Once notice has been provided and a physician selected or, as in the present case, acquiesced to, the employer has no authority to approve or disapprove the treatment rendered. It is in the doctor's province to determine what is necessary, or suitable and proper. *When a disagreement arises as to the treatment rendered, or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.* (emphasis added).

*Hanson v. Penrod Const. Co.,* 425 N.W.2d 396, 399 (S.D.1988).

*Penrod* unequivocally establishes that the Employer has the burden to demonstrate that the treatment rendered by the treating physician was not necessary or suitable and proper.[2] Department heard the testimony of all of the witnesses and judged their credibility. SDCL 15–6–52(a). *Insurance Agents, Inc. v. Zimmerman,* 381 N.W.2d 218 (S.D.1986). Department decided that Employer had not met its burden of proof.[3] The record before Department supports that determination. Krier testified that he weighed 190–195 pounds when he began working for Employer. He weighed 190–195 pounds at the time of the injury to his knee. He was forced into a more sedentary life style after his knee injury and was unable to engage in the same physical activities he could undertake before the injury. He began to gain

---

**2.** Employer argues that the Department should have required that *Krier* prove that his weight gain was caused by his knee injury. Employer relies exclusively on *Rank v. Lindblom,* 459 N.W.2d 247 (S.D.1990). Employer's reliance on *Rank* is misplaced. The employee in *Rank* had long-standing pulmonary problems. The employee suffered a compensable knee injury. We noted that generally employers are not to pay for treatment of preexisting conditions that are "discovered in the course of treatment or surgery for a compensable condition." *Id.* at 250. Rank's pulmonary problems had "existed for quite some time and [were] not the result of his knee injury." We held that the employer was not obligated to pay for the treatment of the preexisting pulmonary problems and adopted the language of the circuit court that:

> There may be instances where preoperative care must be covered under workers' compensation insurance, such as in emergency situations or where the treatment for nonwork related disease would be unnecessary but for the work related injury.

*Id.* at 250.

*Rank* discusses the rule for compensability for treatment of preexisting conditions. There was no testimony that Krier had a preexisting weight problem. Thus, *Rank* is not applicable to this case.

**3.** The standard of review in this case is as follows:

> In appeals from decisions of administrative agencies, this court makes the same review of the agency's decision as did the circuit court. *Lee v. Dept. of Health,* 411 N.W.2d 108 (S.D.1987); *Barkdull v. Homestake Mining Co.,* 411 N.W.2d 408 (S.D.1987) (*Barkdull II*). " 'When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. (citations omitted). When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous.' " *Permann v. Dept. of Labor, Unemployment Insurance Division,* 411 N.W.2d 113, 116 (S.D.1987). We review the factual findings in light of the entire evidence in the record. *Penrod,* 425 N.W.2d at 397.

weight. He had always been a big eater as he had been physically active and done vigorous physical work. After the knee injury, his eating habits remained unchanged until going on the Opti–Fast program. After losing weight, the pain in his knee began to decrease. *Employer did not present any evidence to controvert any of this testimony.*

Krier also called Laurie Mumford, the program director for the Opti–Fast program at McKennan Hospital. She is a registered dietitian and holds a master's degree in food science and nutrition. She testified that Opti–Fast is a weight-loss program only available to people who need to lose weight for medical reasons. No one can enter the program unless prescribed by a physician. Each participant is monitored carefully by a physician. Mumford testified that most insurance companies will pay for the Opti–Fast program because it is not a cosmetic weight-loss program.

The Department's record also contains an affidavit by Dr. William Watson, Krier's physician. This affidavit was received into evidence by virtue of a Prehearing Order issued by Department of Labor. In the affidavit, Dr. Watson states that if called he would testify that Krier continued to:

> experience degeneration and associated problems secondary to the injury to his knee that occurred on December 2, 1979. When I last saw him to re-examine his knee on December 13, 1988, I recommended that he lose weight (approximately 70 pounds). This would reduce his pain by reducing the amount of weight that his knee joint would have to bear.
>
> A medically supervised weight-loss program would be the safest and surest way to obtain permanent weight loss, so I recommended that Steve participate in the Optifast (sic) program.

Employer did not introduce any testimony or evidence to controvert the affidavit. The only witness presented by Employer was the director of another weight-loss plan, who only testified about the nature of her program.

Based on this record we cannot say the Department erred in ordering that Employer pay the costs of the weight-loss program in the amount of $1,873.28. Under the authorities cited above, the program was "necessary or suitable and proper." SDCL 62–4–1. *Penrod,* 425 N.W.2d at 399.

SABERS, J., and HERTZ, Acting J., concur.

MILLER, C.J., concurs specially.

WUEST, J., disqualified.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

MILLER, Chief Justice (concurring specially).

I agree with the majority that *Hanson v. Penrod Const. Co.,* 425 N.W.2d 396 (S.D.1988), controls this case.* Since *Hanson* controls this case, I concur, albeit with trepidation.

I think it is proper to note that if a claimant, such as Krier, puts on weight again, his employer will not necessarily have to pay again.

SDCL 62–4–37 provides:

> *No compensation shall be allowed for any injury* or death *due to the employee's willful misconduct, including intentional self-inflicted injury,* intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer. (Emphasis added.)

*Johnson v. Chicago & N.W. Ry. Co.,* 69 S.D. 111, 7 N.W.2d 145 (1942) (an injury aggravated by the willful or unreasonable conduct of an employee is not compensable as to the additional period of disability).

Furthermore, as stated in 1A Larson, Workmen's Compensation Law § 13.00 (Supp.1990):

---

*Employer has failed to argue that this is not a compensable "injury" under our worker's compensation statutes. *Lather v. Huron College,* 413 N.W.2d 369 (S.D.1987).

When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, *unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.* (Emphasis added.)

Given the unique facts of this case, I concur specially.