BRUNS, Respondent v. STEDMAN et al., Appellants

(82 N.W.2d 845)

(File No. 9632. Opinion filed May 17, 1957)

**Kirby, Simons, McDonnell & Kirby,** Sioux Falls, for Defendants and Appellants.

**Fred D. Shandorf,** Mitchell, for Claimant and Respondent.

RUDOLPH, J. This is a so-called "heart case", arising under the Workmen's Compensation Law. SDC Ch. 64. The Industrial Commissioner denied an award. The claimant appealed to the circuit court which held that claimant was entitled to compensation and the insurance carrier has appealed to this court. We reverse the holding of the trial court.

The parties stipulated before the Industrial Commissioner that the deceased, Clarence Bruns, died of heart failure while employed by Leo F. Stedman who carried a policy of Workmen's Compensation insurance with the Western Surety Company.

The record discloses that the deceased was 40 years old and left surviving him the claimant, his widow. In August 1955 the deceased was employed by Stedman to work in a market and grocery store operated by Stedman. While carrying on the ordinary duties of his work the deceased suddenly died on October 4, 1955. Deceased had no history of a prior "heart condition", and was apparently in his normal health at the time.

The factual details disclose that deceased had operated his own grocery store in Algona, Iowa, but became ill in December 1954 and was confined in a hospital until February 1955. The record is not clear concerning this illness but it appears the liver was affected. The grocery store was sold while Mr. Bruns was in the hospital and after his release he worked at "odd jobs" and as a "handy man" in Algona. In August 1955 he came to Mitchell and immediately commenced work for Mr. Stedman. Mrs. Burns testified he had fully regained his health and on the day of his death "his general condition was very good".

Mr. Bruns had charge of the fruit department and assisted stocking shelves at the Stedman store. About three weeks before Mr. Bruns' death, Mr. Stedman became ill and was unable to attend his duties at the store, which placed

some added responsibilities on Mr. Bruns. Mrs. Bruns testified, "He was to see to it that the deliveries were all gotten out when Mr. Stedman wasn't there, that is, city deliveries, which was a big added responsibility, and he was to see that the store run smoothly." She further testified that the added responsibilities worried him and made him nervous. Mr. Bruns worked three nights a week regularly and during Mr. Stedman's illness he worked an extra night helping scrub. He had worked until 9 o'clock the night before he died.

Mrs. Bruns testified that on the day of his death Mr. Bruns ate a normal breakfast and was in all respects normal when he left the home for work. The men with whom he worked testified that on the day of his death Mr. Bruns appeared normal and did his work in the usual and customary manner. About 3 o'clock on the day of his death Mr. Bruns was pushing a cart filled with cartons; the front wheel of the cart struck a knot hole in the floor causing a carton of pickles to fall to the floor and several jars of pickles were broken. One of his co-workers helped him clean the floor. Thereafter Mr. Bruns continued with his regular work stocking shelves and in a conversation a co-worker remarked, "I'll sure be glad when six o'clock comes; I'm really tired; * * * And he said I'm tired, too". At 4:30 Mr. Bruns had carried a box of cranberries which weighed twenty-four pounds to the front part of the store to show a customer. As he was carrying this box back, and was approaching the door to the rear of the store he collapsed and died almost instantly. Whether he had attempted to open the door is not known as no one was observing him at the moment.

A doctor and ambulance were immediately called and by the time the doctor arrived Mr. Bruns was being carried to the ambulance. The doctor pronounced him dead upon arrival. Mr. Bruns had a slight cut over one eye, and a small amount of blood and mucous appeared at his mouth. The doctor had never seen Mr. Bruns alive and made no further observation of the body. No autopsy was performed.

The doctor was a witness and testified that in his opinion death was caused by a coronary occlusion. He further testified that the events of the day as described above could have

contributed to, accelerated or precipitated the attack. On cross-examination he testified that this man might have died if he were doing no work, and he answered "no" to the specific question, "You don't know what effect this day's events had on him?" The doctor testified generally that any physical exertion or "emotional strain or mental strain which would cause a high nervous tension and as a result have a tendency to increase the demand on his circulation, could have a causal connection with a sudden coronary failure."

The Commissioner determined that claimant had failed to show that decedent's employment had contributed to his death; that he was doing his ordinary work in a normal manner at the time of his collapse and that the cause of death is uncertain and speculative, there being no autopsy.

The circuit court in reversing the denial of an award stated, "The only inference that can be drawn from this record is that the work which the deceased was doing since Stedman's illness, together with the worry over his added responsibilities, and the long hours he had worked in the store the day before, had overtaxed his strength, and when he undertook to carry a box weighing about twenty-five pounds in his arms, it precipitated a sudden and unexpected heart attack which the doctor said was a coronary occlusion, from which he died instantly."

SDC 64.0102(4) defines "injury" or "personal injury" as "only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury; * * *"

 That the death of Mr. Bruns was the result of an accident is established by the law of this state. Johnson v. La Bolt Oil Co., 62 S.D. 391, 252 N.W. 869; Meyer v. Roettele, 64 S.D. 36, 264 N.W. 191; Hanzlik v. Interstate Power Co., 67 S.D. 128, 289 N.W. 589; Tennis v. City of Sturgis, 75 S.D. 17, 58 N.W.2d 301.

 Nor is there any question here but that the death occurred in the course of the employment. The question presented is whether the death arose out of the employment, in other words, whether the employment of the deceased contributed to his death.

■■ At the outset we are confronted with the findings of the Industrial Commissioner. These findings are decisive unless this court can say that such findings are so palpably erroneous as to be unreasonable. It is only where the facts are undisputed and no conflicting inferences respecting the material ultimate fact can be drawn that the question becomes one of law for the court. James v. McDonald, 73 S.D. 78, 39 N.W.2d 478.

■ We consider first the testimony of witnesses other than the doctor. It is established that Mr. Bruns on the day of his death was doing his ordinary work in a normal manner. No one other than the claimant mentioned that he was nervous or worried. Of course claimant was interested in the question at issue and the Commissioner was not bound to accept her testimony. Crilly v. Morris, 70 S.D. 584, 19 N.W.2d 836; Jorgensen v. Jorgensen, 74 S.D. 239, 51 N.W.2d 632. The testimony of the doctor was predicated to a considerable extent upon the testimony given by claimant regarding the nervous state of decedent which she attributed to the absence of Mr. Stedman. If the Commissioner did not accept this testimony, as did the doctor in the hypothetical question asked him, then the doctor's testimony would lose much of its probative effect. The doctor testified that in his opinion the deceased in all probability had died of a coronary occlusion. But in answer to the questions relating to whether decedent's employment contributed to or caused the occlusion the most the doctor would say was "it could have". It further appears from the doctor's testimony that a coronary occlusion may occur from at least two causes, a spasm of the muscles in the wall of the coronary vessel, or to a clot which builds up and floats around in the circulation, gets into the coronary vessel and plugs it, which is described as an embolus. With this testimony as a background the following questions and answers appear in the cross-examination.

"Q. And I believe you did state that doing his ordinary work, the same thing could have happened? A. Yes, that's right.

"Q. Especially if there was an embolus? A. Yes.

"Q. In fact it might be that he was doing no work at all and the same thing could have happened, couldn't it? A. That's right. These people sometimes die in bed when they're asleep."

▆ As stated above no autopsy was held. As we view this evidence of the doctor the most it established was that decedent's employment could have accelerated or precipitated the coronary occlusion. That such result was conceivable or possible did not require the Commissioner to give controlling effect thereto. Simons v. Kidd, 73 S.D 306, 42 N.W.2d 307.

▆▆ The burden was upon the claimant to establish by a preponderance of the evidence that the coronary occlusion was caused or contributed to by the employment. The effect of the Commissioner's findings is that plaintiff has failed to sustain this burden. Conceding that the Commissioner would have been justified in basing a favorable award upon the testimony appearing in the record, we do not believe, for the reasons above stated, that he was bound to do so. There was nothing so conclusive about the doctor's testimony that we can say it was unreasonable for the Commissioner not to give it controlling effect. It follows that we cannot hold as a matter of law that the Commissioner erred in determining that claimant had failed to sustain the burden placed upon her.

The judgment appealed from is reversed, and the circuit court is directed to enter judgment affirming the decision of the Industrial Commissioner.

All the Judges concur.