Ronald L. KENNEDY, Claimant and Appellant,

v.

HUBBARD MILLING COMPANY
Employer and Appellee

and

Northwestern National Insurance Company, Insurer and Appellee.

No. 16923.

Supreme Court of South Dakota.

Considered on Briefs Sept. 19, 1990.

Decided Feb. 6, 1991.

Scott Sumner of Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for claimant and appellant.

Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellees employer and insurer.

MORGAN, Retired Justice.

Ronald L. Kennedy (Kennedy), an employee of Hubbard Milling Company (Employer), brought a workers' compensation claim before the South Dakota Department of Labor, Division of Labor and Management (Department), seeking to elevate a fifteen percent (15%) permanent partial disability rating resulting from a back injury in the course of employment to a permanent total disability rating under the odd-lot doctrine.[1]  Kennedy's claim was denied by Department, and Department's decision was subsequently affirmed by the circuit court.  On appeal, Kennedy argues that certain findings of Department are clearly erroneous, and that the position offered by Employer was "favored work" that should not have been considered in Department's decision.  We affirm.

Kennedy is presently forty-six years old, and holds a general equivalency diploma which he earned in 1984.  In 1968, when he was twenty-four years old, Kennedy began working at a feed and flour mill in Rapid City, South Dakota, that is now owned and operated by Employer.  Prior to 1968, he had worked as a manual laborer on construction, and during his employment at the mill he held positions which entailed heavy manual labor.

The history of this claim begins on July 7, 1981, when Kennedy sustained a back injury while in the course and scope of his employment.  He first sought medical treatment from a general practitioner who referred him to an orthopedic surgeon.

---

1.  The elements of the odd-lot doctrine in the context of a permanent total disability claim were set out in *Hanson v. Penrod Construction Co.,* 425 N.W.2d 396, 398 (S.D.1988) (quoting *Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417, 418 (S.D.1982) (*Barkdull I*)), where we said that

[A] person is totally disabled if his [or her] physical condition, in combination with his [or her] age, training, and experience, and the type of work available in his [or her] community, causes him [or her] to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

Kennedy underwent conservative care and did not work until August 17, 1981, at which time his physician advised that he could return to work.

Kennedy returned to work, performing mostly light-duty work. On December 7, 1981, however, he was involved in heavy lifting and developed severe back pain. Kennedy then stopped working. He made two unsuccessful attempts to return to work in early 1982. After that, Kennedy remained off work for the balance of 1982, all of 1983 and all of 1984. During this time, Employer and its insurer, Northwestern National Insurance Company, paid temporary total disability benefits, permanent partial disability benefits, and medical expenses associated with Kennedy's work-related injury.

From 1981 through 1984, Kennedy consulted a number of physicians and specialists, and participated in various forms of treatment, with little improvement. In 1985, Kennedy was referred to a neurologist whose treatment resulted in substantial improvement of his condition. Kennedy returned to work on April 15, 1985. He began on a gradual "work hardening" program and within two weeks he progressed to an eight-hour work day. By late May, Kennedy was again working full-time in his regular position.

In June, Kennedy reinjured his back while working and treatment provided little relief. He discontinued work on June 13, 1985. On July 1, 1985, Kennedy's neurologist released him to return to light-duty work. On July 17, 1985, Employer offered Kennedy a light-duty sweeper position with severe restrictions on lifting. Kennedy declined this offer of employment, citing as his reason his previous bad experiences with attempts at light-duty work with Employer. Kennedy has never returned to work with Hubbard Milling Company or any other employer since June 13, 1985. In October, 1985, Kennedy and his family moved to Columbia Falls, Montana, where he was residing at the time of the hearing.

On October 11 and 12, 1988, the Department conducted a formal hearing on Kennedy's claim for permanent total disability benefits. On March 15, 1989, Department issued its decision denying Kennedy permanent total disability benefits. Findings of fact and conclusions of law, and an order were subsequently issued on March 31, 1989. Kennedy appealed to the circuit court for the Sixth Judicial Circuit. The circuit court affirmed the decision of Department and this appeal ensued.

Before discussing the issues, we reiterate our scope of review of workers' compensation appeals as articulated in *Permann v. Department of Labor, Unemployment Insurance Division*, 411 N.W.2d 113 (S.D.1987). When presented with a question of fact, this court must determine whether the agency's findings are clearly erroneous. *Id.* at 116–17. Further, "the question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.... [T]he court shall give great weight to the findings made and inferences drawn by an agency on questions of fact." *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 711 (S.D.1989) (Morgan, J., concurring specially). Questions of law, however, are reviewed de novo. *Permann*, 411 N.W.2d at 117.

Kennedy's claim that he is entitled to odd-lot benefits under the *Barkdull I* doctrine requires that we apply this test:

> The claimant has the burden to make a prima facie showing that his physical impairment, mental capacity, education, training, and age place him in an odd-lot category. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant.

*Schlenker v. Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D.1990) (citations omitted); *Wendel v. Domestic Seed & Supply*, 446 N.W.2d 265, 270 (S.D.1989); *see* 2 A. Larson, Workmen's Compensation Law § 57.66 (1987).

■ Department's decision, as stated in its conclusions of law, was that "[Kennedy] has failed to carry his burden of proof in establishing a prima facie case for entitlement to permanent total disability benefits

under the odd-lot doctrine." With that decision, Kennedy takes issue in the following respects:

1. Findings of Fact XIII and XIV are not supported by the evidence found in the deposition testimony of Dr. Stephens;
2. Finding of Fact XVIII is not supported by the evidence in the record as a whole;
3. Finding of Fact XIX is clearly contrary to the medical evidence in the record;
4. Finding of Fact XX is clearly erroneous under the "favored work" doctrine;
5. The proffered employment was "favored work"; and
6. The Department erred in considering the proffered work in evaluating the second phase in the test, the employer's burden to establish availability of work.

First, we note that it is undisputed that Kennedy sustained a back injury while in the course and scope of his employment with Employer on July 7, 1981. Further, when Kennedy returned to work on three occasions within the next year, he was disabled due to aggravation of the injury. Finally, after nearly three years "off work,"[2] he again returned to work in April of 1985, but within two months his condition was again greatly aggravated while working. It is from that point on that the controversy developed.

■ Turning then to Kennedy's dispute with the findings of fact, we first examine Findings XIII and XIV, which state:

### XIII.

That in the opinion of Dr. Stephens, Claimant never will return to work. This [is] based upon the fact that Claimant is presently receiving Social Security and that he is not able to do a job or will not do a job for whatever reason because he wants to stay within the system and be disabled.

### XIV.

That Claimant had no plans to obtain employment in Montana when he moved, and did not even register with Job Services in Montana until Daniel Schara, a Montana vocational consultant, suggested that he do so two years after Claimant moved.

Kennedy argues that these findings must be based upon a piecemeal reading of excerpts, out of context, from Dr. Stephens' deposition. Because deposition testimony is relied upon, he also claims that there should be no presumption that the findings are correct. Finding XIII is directly supported by the deposition testimony of Dr. John V. Stephens, Kennedy's own physician who specializes in physical medicine and rehabilitation. In fact, as a whole, the testimony of Dr. Stephens indicates that while Kennedy does suffer some pain from his injury, he is fully capable of returning to full-time light-duty work. Kennedy points to the fact that Dr. Stephens testified that he, Kennedy, was not malingering, and that his pain was real, as evidence that Department's finding lacks support. However, it is the function of the trier of fact to resolve conflicting testimony and evaluate credibility of witnesses to determine the comparative weight to be given to such testimony. *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 321, 41 N.W.2d 433, 437–38 (1950). Furthermore, Department should not arbitrarily disregard uncontradicted or undiscredited expert testimony. *Campbell v. City of Chamberlain*, 78 S.D. 245, 100 N.W.2d 707 (1960). Our reading of Dr. Stephens' testimony, together with other substantial evidence in the record supports these findings and they are not clearly erroneous.

■ The next finding with which Kennedy takes issue is:

### XVIII.

That Claimant's off-duty activities since his injury reflect a willingness to

---

**2.** During this period Kennedy was receiving permanent partial disability benefits based upon a fifteen percent disability rating. That benefit is not in issue here.

tolerate the pain and discomfort associated with activities he enjoys, but Claimant has no such willingness in regard to employment or motivation to search for employment.

Kennedy argues that there is no support for this finding that he is not motivated to seek suitable employment. He argues that the pain he suffers is real and debilitating, directly causing him to be unemployable. This contention was raised at the Department hearing on Kennedy's claim, and the record supports the rejection of this claim. Department is not required to accept the testimony of the claimant and is free to choose between conflicting testimony. *Bruns v. Stedman*, 76 S.D. 586, 82 N.W.2d 845 (1957). Although Kennedy testified that he was completely unable to work because of his back injury and associated pain, there was testimony that he continued to lead an active life.[3] This evidence, coupled with the testimony of Kennedy's doctor and his vocational rehabilitation counselor, as will be mentioned *infra*, adequately supports both Findings XIV and XVIII.

Somewhat in conjunction with the Finding XVIII, Kennedy also takes exception with Finding XIX, which reads:

That the medical evidence and evidence of Claimant's home activities shows that Claimant is capable of suitable sedentary or light work of a regular and continuous nature.

Kennedy argues that Finding XIX is erroneous because "medical evidence supports the finding that [he] is not physically capable of performing work activities in the job market." On appellate review, however, the question is not whether Kennedy's argument finds some support in the record but rather whether there is substantial evidence to support Department's finding. *Lawler*, 435 N.W.2d at 711. The record contains expert testimony of medical specialists and vocational rehabilitation consultants stating that Kennedy is capable of sedentary-light or light-moderate labor. Evidence was received in the form of live testimony, deposition testimony, and professional records from ten physicians and three vocational consultants, in addition to the testimony of the interested parties. Substantial evidence supports Department's finding that Kennedy is capable of light work of a regular and continuous nature, and thus we will not disturb this finding.

Kennedy's argument with Finding XX is intertwined with his arguments on the "favored work" doctrine. Finding XX states:

That Claimant has refused suitable work of a regular and continuous nature within his capabilities offered to him by Employer.

Kennedy argues that Finding XX is erroneous for several reasons. He first argues that Finding XX is erroneous because his refusal of the sweeper position was valid for the reasons that his previous attempts to return to light-duty work for Employer all resulted in re-injury. Although there is evidence in the record to support this argument, Department considered and rejected it. Specifically, Department found that Kennedy's previous attempts to return to work did not involve the same type of restricted light-duty work as is involved in the sweeping position. Department found that the light-duty sweeper position was within Kennedy's physical limitations. Department found that two of Kennedy's own physicians found him "capable of work involving sales, sweeping, forestry, or ordinary driving or air travel" and "work in electric sub-assembly, mail clerk, photograph finisher, cashier, and small products assembly." This finding is supported by extensive evidence in the record and Kennedy has not challenged the sufficiency of the evidentiary support here.

---

**3.** There is considerable evidence in the record that, despite his claim to be totally and permanently disabled, Kennedy has continued to lead an active life since his injury. He generally takes no pain medication and walks up to one mile a day. Since the injury, Kennedy continues to go bowling, ice fishing, and hunting, and even butchers his own deer. He also cuts three to five cords of firewood each year, sometimes splitting the wood with an axe. After his injury, Kennedy even participated in the construction of an addition to his house, laying the floor, nailing up sheetrock, and putting on the roof.

Kennedy's second argument is that it was reasonable to refuse the sweeper position because it was "favored work." This argument is intertwined with the arguments in his final two issues: whether, in fact, the proffered work was "favored work"; and whether Department erred in considering it in evaluating *the second phase of the test, availability of work.*

In *Tiensvold v. Universal Transport, Inc.,* 464 N.W.2d 820, 822 (S.D.1991), we recently adopted the language of the Iowa Supreme Court[4] discussing the second phase of the test, the burden of Employer to show availability of work, stating that "[i]t is triggered only when the worker makes a prima facie case for inclusion in the odd-lot category." Further,

It is normally incumbent upon an injured [worker], at a hearing to determine loss of earning capacity to demonstrate a reasonable effort to secure employment in the area of ... residence. Where testimony discloses that a reasonable effort was made, the burden of going forward with evidence to show the availability of suitable employment is on the employer and carrier.

*Tiensvold,* 464 N.W.2d at 823 (citations omitted).

■ At this point we again note the Department's conclusion:

Claimant has failed to carry his burden of proof in establishing a prima facie case for entitlement to permanent total disability benefits under the odd-lot doctrine.

Thus, the burden has never shifted to Employer to show that there was work available, *see Wendel,* 446 N.W.2d at 270, and we do not reach the issue of whether the sweeper job was "odd-lot" or "favored work." Findings XIII, XIV, XVIII and XIX, previously discussed, fully support Department's conclusion. Kennedy did not demonstrate a reasonable effort to secure employment, rather, he sat back and collected his partial disability and social security. His own doctor noted his desire to stay within the system and be disabled. To that extent, Finding XX was extraneous

and we need not examine Kennedy's arguments on favored work.

Affirmed.

MILLER, C.J., WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, did not participate.

HENDERSON, Justice (dissenting).

We have, before us, another case to review in the highest court of this state involving a working man's benefits. This case is a studied and belabored effort on the part of employer and insurer to beat and cheat a working man out of his permanent total disability benefits under the South Dakota Worker's Compensation Law. Kennedy performed very hard, heavy work. He manually carried heavy sacks of flour and feed sacks, stacking them on trucks and placing them onto railroad cars. The feed was 100# s of "sweet chop" which he had to stack five layers high. We, on this Court, seem to have again overlooked precedent in this Court which I again remind the members of this Court as follows: "It is long-standing public policy that worker's compensation statutes be liberally construed in favor of injured employees." *Wilcox v. City of Winner,* 446 N.W.2d 772 (S.D.1989) (Justice Morgan, author); *S.D. Med. Service v. Minn. Mut. Fire & Cas. Co.,* 303 N.W.2d 358 (S.D.1981) (Justice Morgan, author). "Worker's compensation statutes are 'remedial and should be liberally construed to effectuate its purpose.'" *Moody v. L.W. Tyler, Custom Combiners,* 297 N.W.2d 179, 180 (S.D.1980) (Chief Justice Wollman, author).

These are relatively recent cases but they are the offspring of decisions reaching back into past decades of the same public policy. I am not suggesting that this Court is enshrouded in a spirit of indifference; rather, I am suggesting that this

4. *Guyton v. Irving Jensen Co.,* 373 N.W.2d 101    (Iowa 1985).

Court—here—has abandoned the social need upon which the Worker's Compensation Law was founded. In my opinion, worker's compensation benefits, once causation has been established, is to be construed liberally to uplift individual dignity—to thus enable injured working people, in South Dakota, to buy groceries, pay rent, make payments on their house, pay taxes, purchase clothing and medicine, and provide for economic stability in raising their family. The Worker's Compensation Law is a narrow road—it is a restricted avenue for redress; the gate is not wide open but closed for damages; therefore, the injured employees should have this law "liberally construed" to preserve their restricted, statutory rights and to promote justice.

The Findings of Fact are clearly erroneous under the rule in *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970) and the Conclusions of Law are mistakes of law under the *Permann* decision. *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987). Accordingly, Kennedy is entitled to win this appeal and I hereby uphold his cause. As far as I am concerned, reviewing the evidence as a whole, I perceive this scenario as a classic case for permanent total disability under the Odd Lot Doctrine set out in *Barkdull*. (Sporadic employment resulting in an insubstantial income considering physical condition, age, training, experience, and type of work available in his community). *Wendel v. Domestic Seed & Supply*, 446 N.W.2d 265, 268, 270 (S.D.1989). Kennedy is a man with a physical condition and chronic pain that will not allow him to return to his usual and customary line of employment. At least two physicians advised him to not return to work.[1] At the Boulder Pain Clinic, a number of diagnoses were made including *chronic* mechanical back and hip pain secondary to bilateral sacroiliac joint disfunction and left piriformis spasm together with disc disease at the L4–L5 level, which results in radiating pain and femoral neuropathy together with reactive depression. The evidence establishes this. I believe he has made a prima facie case that he is in the "odd lot" category of injured employees. Consequently, the burden now shifts to Hubbard Milling to show that some kind of work is regularly and continuously available to Kennedy. 2 Larson Workman's Compensation Law, § 57.61(c); *Rank v. Lindblom*, 459 N.W.2d 247, 249 (S.D.1990).

Attempting to meet this burden, Hubbard Milling cleverly, if not insidiously, specially created a Humpty–Dumpty [2] job in an effort to place Kennedy back into the work force and to cheat him out of his benefits. It was a "sweeping position" so that he could sweep and clean, yet he had to put in 8 hours a day on concrete surfaces. It was a menial job for a grown, proud man, a man who had worked hard all of his life and who had an eighth grade education, but eventually received his GED. He made his living with his back and his arms and his legs. By taking this job, Hubbard wanted him to lie down several times during the day (and rest his back) which was another industrial effort to try to put Humpty–Dumpty back together again. This is "sporadic" employment resulting in "insubstantial income" under *Barkdull* and its progeny. It is nothing more than an industrial "con-job" sold by Hubbard Milling Company to the Department of Labor, the circuit court and the Supreme Court. But this Justice is not buying it. Hubbard Milling is not going to continue with Kennedy or any other member of the public, on a day by day basis, with this type of "special treatment" labor.

Kennedy, a blue collar worker, by limited education and calling, demonstrated by trying to work, again and again, that he unsuccessfully made reasonable efforts to work and to be a productive laborer. He met his burden. 2 Larson, Law of Workmen's Compensation § 57.61(d).

---

1. Zinter, Circuit Judge, relied on the subjective testimony of Dr. Stephens that he, Kennedy, will never go to work as he draws Social Security. Finding Fact 13.

2. Harkening to the old nursery rhyme: "All the King's horses and all the King's men, could not put Humpty–Dumpty back together again."

Employment available only through the special treatment and consideration of an employer is not probative evidence of a claimant's true employability. (Industrial Humpty–Dumpty). In other words, it does not establish Kennedy's wage-earning capacity. *Lynch v. Briggs Mfg. Co.*, 329 Mich. 168, 45 N.W.2d 20 (1951). The "favored work doctrine" was more recently discussed in *Bower v. Whitehall Leather Co.*, 412 Mich. 172, 312 N.W.2d 640 (1980). The Michigan Supreme Court stated:

> The favored-work doctrine is a purely judicial creation. Favored, or light, work can be loosely defined as less strenuous post-injury work. Wages from favored work may be used as a setoff against an employer's compensation liability [citations omitted] but favored-work wages do not establish an earning capacity, and when such wages cease, they neither suspend nor bar compensation.

In conclusion, this laboring man is not physically capable of performing work activities in the competitive job market. Dr. Farber, at Abbot Northwestern Hospital, Sister Kenny Institute, Minneapolis, Minnesota, examined and treated Kennedy several times. In June, 1983, Dr. Farber said Kennedy's condition was worsening noting increased back pain. Kennedy has not worked since 1985! It is now 1991. He is simply unable to work. Kennedy sought rehabilitation through the South Dakota Department of Vocational Rehabilitation. It was determined there were no jobs for Kennedy. Ron Ochs of said department testified that Kennedy could do (only) part-time therapeutic woodworking in his garage and Kennedy could not sustain activity in full-time, regular employment. In fact, when Kennedy returned to work and

trying his damndest to be a steady working man, he repeatedly reinjured his back and he now appears to be legally punished for returning to work and by pursuing vocational options in good faith, all of which appears to me to be manifest from the record. Each time he tried to work, his back went down on him, even when he was given light-duty positions by this same industrial company. Furthermore, *Lawler* is inapposite authority for the reason that it centers on the causation issue. Here, causation is not at issue.

Under SDCL § 62–4–6(23) and SDCL 62–4–7, this blue collar worker, who honestly tried several times to return to work, and reinjured his back each time, is entitled to permanent total disability benefits.[3]

I would therefore reverse.

### CAVEAT

A fishing pole, a bowling ball, a hunting knife, and chores around a house are not akin to 100 lb. sacks and/or sweeping a floor—being on concrete eight hours a day. Kennedy bowled at the suggestion of a rehabilitation counsellor. He hunts from his pickup. Kennedy cannot hear well. He wears hearing aids and cannot discern conversation where there is noise in the background. He has a difficult time in hearing phone conversations. Poor guy! Read Luke: 6:38.

---

**3.** Kennedy was placed, under a pencil-pushing theory of conservative treatment, in "light duty positions;" but, invariably, the record shows he would be forced to do hard labor again. Exam-

ple: he was assigned to clean a betonite "pit;" he had to stoop, bend, kneel, crawl and lift—with a scoop and bucket; he reinjured his back again!