Norris TIENSVOLD,
Claimant/Appellant,

v.

UNIVERSAL TRANSPORT, INC.,
Employer/Appellee,

and

Maryland Casualty Company,
Insurer/Appellee.

Nos. 17030, 17031.

Supreme Court of South Dakota.

Considered on Briefs Sept. 20, 1990.

Decided Jan. 2, 1991.

Mitchell C. LaFleur, LaFleur, LaFleur & LaFleur, Rapid City, for claimant/appellant.

Franklin J. Wallahan, Wallahan & Eicher, Rapid City, for employer and insurer/appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This case was heard before the Department of Labor on January 16, 1987. Norris Tiensvold (Tiensvold) sought a determination of permanent total disability after suffering injury in the course of his employment. The Department of Labor determined that Tiensvold would be allowed a permanent partial disability benefit of 20% of the right arm, but was denied permanent total disability benefits. Tiensvold subsequently petitioned for review of that decision on October 20, 1987, but was denied by the Secretary of Labor.

On November 18, 1987, Tiensvold appealed this decision to the circuit court and thereafter filed an application to present additional evidence, which was granted. Following a hearing held May 27, 1988, the Department of Labor entered a Modified Order and Modified Findings of Fact and Conclusions of Law finding Tiensvold to be permanently and totally disabled. Tiensvold's employer, Universal Transport, Inc. (UTI), and its Insurer, Maryland Casualty Company filed a petition for review by the Department of Labor. This was denied on May 29, 1989. Subsequently, Universal and Casualty appealed this decision to the circuit court.

On January 25, 1990, an Order was entered by the circuit court reversing the Modified Order finding Tiensvold to be permanently and totally disabled. On appeal, Tiensvold argues that:

(1) the Department of Labor's finding that Tiensvold was permanently and totally disabled was not clearly erroneous.

By Notice of Review, UTI argues that it is entitled to reimbursement of $529.29, which constitutes the full amount of temporary total disability benefits overpaid to Tiensvold.

We affirm the trial court, agreeing that the Department of Labor's finding of Tiensvold to be permanently and totally disabled was clearly erroneous.

## FACTS

Tiensvold was employed by UTI as a truck driver. On December 28, 1984, during the course and scope of his employment, Tiensvold collided with a train and suffered various injuries. Based upon Tiensvold's earning record, he qualified for $247.00 per week in worker's compensation benefits.

Following the accident, Dr. William Janss treated Tiensvold, who complained of pain in the upper back, neck and shoulder area, with weakness and soreness across his shoulders. He had no fractures, dislocations or other abnormalities. Over a period of years Tiensvold was examined by Dr. Edward James, Dr. Dale Berkebile, a physical therapist, Dr. David Sabow, Dr. Timothy Gill, and the Mayo Clinic. A CAT scan revealed no organic abnormality. The doctors at the Mayo Clinic concluded Tiensvold suffered from a probable "frozen" shoulder, but he had no neurological problems.

Dr. Berkebile examined Tiensvold on January 14, 1986. He found that Tiensvold had a full range of motion in his neck and shoulder, but suffered a painful arc when

abducting his arm between 90 and 120 degrees. Dr. Berkebile noted some atrophy in the right anterior deltoid muscle. He performed exploratory surgery on June 16, 1986, which left Tiensvold's complaints unresolved. Dr. Berkebile noted that he "still had a full range of motion in his shoulder, no evidence of weakness, and pain still in the same arc of 90 degrees to 120." When Dr. Berkebile last saw Tiensvold on July 22, 1986, he was still complaining of pain in his shoulder. Dr. Berkebile assigned a permanency rating of 20% of the right arm. He later testified that Tiensvold should not return to his usual employment as an over-the-road trucker. He suggested vocational rehabilitation and that Tiensvold try other work on a "trial and error" basis.

At the time of the first hearing Tiensvold was 55 years old. His employment history consisted entirely of unskilled or semi-skilled jobs, including a farm and ranch laborer, repairman, factory worker, gas station attendant, mail carrier, and trucker.

Otto Kaul, Tiensvold's expert witness, testified that because of Tiensvold's age and eighth grade education, retraining was not realistic. Considering his age, education, medical information and experience Kaul felt Tiensvold was totally disabled from obtaining any substantial employment in the Black Hills labor market. The hearing examiner, Michael Hanlon, concluded that Tiensvold had not made reasonable efforts to find work and thus he failed to make a prima facie case for odd-lot permanent total disability.

On appeal to the circuit court Tiensvold sought a remand to the Department to present additional evidence, namely: Tiensvold's aptitude test results in order to establish a further factual basis for Kaul's opinion. The court granted the request pursuant to SDCL 1–26–34.

At the second hearing before a different hearing examiner, Debra Norberg, Kaul testified that the test results supported his original opinion. Employer–Insurer objected to Kaul's testimony, interpreting the court's remand order as allowing only the raw test results to be offered. Ms. Nor-berg overruled the objection. Ms. Norberg thereafter concluded that Tiensvold was indeed totally and permanently disabled under the odd-lot doctrine. The circuit court disagreed, reversing the Department of Labor.

## DECISION

*The Department of Labor's finding that Tiensvold was permanently and totally disabled was clearly erroneous.*

■ At the outset, it should be noted that our standard of review for administrative decisions is quite well established. This Court will overrule a decision only when the agency's factual determinations are "clearly erroneous." However, an agency's legal conclusions are freely reviewable. *Permann v. Department of Labor*, 411 N.W.2d 113 (S.D.1987).

■ Tiensvold claims that the Department of Labor's decision that he was permanently and totally disabled was not clearly erroneous. He argues that a prima facie case for "odd-lot" benefits was established.

We have stated that:

A person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

*Wendel v. Domestic Seed & Supply*, 446 N.W.2d 265 (S.D.1989); *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 398 (S.D. 1988) (quoting *Schulte v. C.H. Peterson Constr. Co.*, 278 Minn. 79, 153 N.W.2d 130, 133–134 (1967)). Under this "odd-lot" test, the claimant has the burden to make a prima facie showing that his physical impairment, mental capacity, education, training and age place him in an odd-lot category. SDCL § 62–8–1(4); 62–8–2; *Kraft v. Kohlberg Mfg. Co.*, 88 S.D. 140, 215 N.W.2d 844 (1974). The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant. *Wendel, supra.* However, the burden only shifts when a

worker makes a prima facie case of total disability by producing substantial evidence that the claimant is not employable in the competitive market.

In *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 105 (Iowa 1985), the Iowa Supreme Court adopted the following from 2A Larsen, The Law of [Worker's] Compensation, section 57.51 at 10–164.95 to 10–164.113:

> A suggested general-purpose principle on burden of proof in this line of cases would run as follows: If the evidence of degree of obvious physical impairment coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant.

*Id.*

The Iowa Supreme Court further stated: "It is triggered only when the worker makes a prima facie case for inclusion in the odd-lot category." 373 N.W.2d at 105.

> It is normally incumbent upon an injured [worker], at a hearing to determine loss of earning capacity to demonstrate a reasonable effort to secure employment in the area of ... residence. Where testimony discloses that a reasonable effort was made, the burden of going forward with evidence to show the availability of suitable employment is on the employer and carrier.

*Id.* (Citation omitted).

The circuit court quoted *Valley Mould & Iron Co. v. Industrial Commission*, 84 Ill.2d 538, 50 Ill.Dec. 710, 419 N.E.2d 1159 (1981) as authority of that which a claimant must show to meet his burden of proving inclusion in the odd-lot category:

> This burden may be met by a showing of diligent but unsuccessful attempts to find work (*A.M.T.C. of Illinois, Inc. v. Industrial Commission*, 397 N.E.2d 804 (Ill.1979), 77 Ill.2d 482, 490, 34 Ill.Dec. 132, 397 N.E.2d 984), or by proof that because of the above mentioned qualities he is unfit to perform any but the most

menial tasks for which no stable market exists (*Sterling Steel Casting Co., v. Industrial Com.*, (1979), 74 Ill.2d 273, 278, 24 Ill.Dec. 168, 384 N.E.2d 1326; *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill.2d 255, 259, 326 N.E.2d 744).

■ Initially, it should be pointed out that, if Tiensvold is "obviously unemployable," he does not have to prove he sought work. The question then becomes was Tiensvold "obviously unemployable." The circuit court thought not, and we agree. Its finding that Tiensvold was not permanently disabled and capable of returning to gainful employment was based on the assessment of medical evidence. No physician placed physical restraints on Tiensvold's activities. Dr. Berkebile was the only medical doctor to offer testimony and he testified that Tiensvold should not return to driving a truck. He never opined that Tiensvold was disabled from employment in other occupations. Dr. Berkebile further testified about Tiensvold's impairment:

> I believe that he has a 20% permanent physical impairment and loss of physical function to the whole arm but if a disability rating is given, it would be much higher, up around 75% as far as truck driving. I do not think he can return to his occupation as over the road truck driver.

> I can't be very specific about physical restrictions because I think this is going to be a trial and error type of thing with vocational rehabilitation.

Thus, as the court held in *Guyton*, "when a worker makes a prima facie case of total disability by producing substantial evidence that the worker is not employable in the competitive market" the burden shifts to the employer. But here, Tiensvold did not make a prima facie showing.

■ The circuit court also found from the record, and we agree, that Tiensvold failed to produce convincing testimony that he was motivated to work. Although lack of motivation to work is only one factor to look at when considering if a claimant fits into the "odd-lot" category, we believe it

should be examined none the less. In *Deaton v. State Accident Insurance Fund*, 13 Or.App. 298, 509 P.2d 1215 (1973), the Oregon Supreme Court stated:

> The Claimant has offered no evidence that he has sought employment; the Fund has offered no evidence that suitable employment is available to the Claimant. The Claimant argues that under the facts of this case he comes within the odd-lot category regardless of his motivation to return to gainful employment and, in the alternative, that if motivation is a material factor in determining whether he comes within the odd-lot category, the evidence shows that he has demonstrated the necessary motivation. The Fund argues that a showing of motivation on the part of a claimant to return to work is always a prerequisite to bring him within the odd-lot category and that the evidence in this case shows that the Claimant does not have such motivation. The consistent thread of all these opinions and others cited therein is that: (1) motivation is not necessary to establish a prima facie case of odd-lot status if the medical facts, when considered along with other factors such as age, education, mental capacity and training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a prima facie case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant.

In 1977 the Oregon Court of Appeals reevaluated the motivation factor in worker's compensation cases stating:

> (E)vidence should be considered in all its variety, free from the limiting semantical framework of "motivation." The use of the term should be abandoned except to convey its specific meaning.
>
> Therefore, we conclude that evidence of the existence or absence of motivation is not essential to the establishment or disproof of a claim of permanent total disability. Rather, when odd-lot status is in issue and such evidence is offered, it is to be weighed by the fact finder, free from talismanic significance and procedural consequences, along with other evidence from either party which reflects on the existence, nature and scope of disability.

*Wilson v. Weyerhaeuser Co.*, 30 Or.App. 403, 567 P.2d 567, 573 (1977).

We quote from the circuit court opinion in this case:

> Although surely not dispositive of his claim, motivation was a valid factor to consider in assessing the nature of Tiensvold's disability. Other than opinion testimony, there was no objective evidence that Tiensvold was motivated to seek work after his injury. His expert witness testified that Tiensvold was motivated based on his pre-injury work record. Tiensvold held many jobs during his career and had no history of malingering. Yet the question of motivation deals primarily with a claimant's actions after the work-related injury. The issue is whether regular and sustaining work is available to claimant considering his physical condition, age, training, and experience. His pre-injury work experience may give some insight into his character for industriousness, but the focal point should be on how he responds to his disability. With this focus in mind, the uncontradicted facts established Tiensvold was unmotivated to work or seek rehabilitation after his injury even though his doctor recommended rehabilitation and work on a trial and error basis. Tiensvold abandoned even a pretense of interest in ever working again.

Although the rehabilitation expert felt Tiensvold was well-motivated, he conceded that motivated persons with greater disabilities than Tiensvold could find and maintain work. We agree with the circuit court. Not only did Tiensvold refuse to look for work, he also would not consider possible vocational rehabilitation programs.

■ As stated earlier, the burden of proving availability of regular employment within the claimant's capabilities shifts to

the employer only when the claimant makes a prima facie case that he is in the odd-lot category. *Gordon v. West*, 103 Idaho 100, 645 P.2d 334 (1982). Therefore, it remained the burden of Tiensvold to prove unavailability of suitable work in attempting to establish his alleged total disability. Once again, Tiensvold has not met his burden. Tiensvold has failed to establish that he has tried and could not perform other work and has failed to establish that there was no suitable occupation available to him.

Based upon the evidence, the Department of Labor's Findings and Conclusions were clearly erroneous. The circuit court properly overturned the Department of Labor with regard to Tiensvold's odd-lot disability status.

■ By Notice of Review, UTI argues that they are entitled to reimbursement of $529.29, which constitutes the full amount of temporary total benefits overpaid to Tiensvold. The judgment of the circuit court in this case affirmed the initial decision and order of the Department of Labor which denied UTI's and Maryland Casualty's request for reimbursement of the temporary total disability benefits overpaid to Tiensvold.

■ Concerning the Notice of Review we hold that there must be a repayment of the overpayment made in good faith by UTI. We base our holding upon the general premise that an employer is entitled, upon the award of compensation being made against it, to credit or reimbursement for any payments which may have already been made to the worker in advance by way of compensation for the injury in question. 82 Am.Jur.2d, Workmen's Compensation § 365. This general treatise authority is buttressed by holdings in *Huston v. Workers' Compensation Appeals Board*, 95 Cal.App.3d 856, 157 Cal.Rptr. 355 (1979); *Belam Florida Corp. v. Dardy*, 397 So.2d 756 (Fla.App.1981) and *Wilson Food Corp. v. Cherry*, 315 N.W.2d 756 (Iowa 1982). We particularly adopt the rationale of the Iowa Supreme Court in *Wilson Food Corp.* which stated:

It is argued that it is unfair to allow the employer to recoup for his own error at the inconvenience to the claimant. *We think not. We think the public interest will be better served by encouraging employers to freely pay injured employees without adversary strictness.* It is not so unfair to compel the claimant to face at an earlier date the termination he would face later in any event so as not to penalize the employer. *Id.* at 758. (Emphasis added).

We also adopt the reasoning in *Western Casualty and Surety Company v. Adkins*, 619 S.W.2d 502 (Ky.App.1981) wherein it was held:

Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of his ultimate liability would certainly discourage voluntary payment by employers and would therefore constitute a disservice to injured workers generally. *Id.* at 504.

We affirm the trial court's holding with the exception of the Notice of Review, which is reversed hereby.

All the Justices concur.