William E. HENDRIX, Employee
and Appellant,

v.

GRAHAM TIRE COMPANY,
Employer and Appellee,

and

The Travelers, Insurer and Appellee.

Nos. 18463, 18475.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1994.

Decided Aug. 3, 1994.

Wally Eklund of Johnson, Eklund, Nicholson, Dougherty & Abourezk, Gregory, for appellant.

Susan Jansa Brunick of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees.

SABERS, Justice.

Employee appeals partially adverse determination of worker's compensation benefits. We affirm.

## FACTS

From July, 1981, until April 7, 1990, William Hendrix (Hendrix) was a route salesman for Graham Tire (Graham). His delivery route ranged from 300 to 1100 miles per week. Hendrix's duties at Graham included the loading and unloading of tires ranging in size from car tires to farm tractor tires. Hendrix's salary was based upon commissions and in his last full year of employment, his gross salary was $26,892.81.

On September 25, 1989, Hendrix, while in the course of his employment, was involved in a one vehicle rollover accident. Hendrix experienced bruises and pain in his back, shoulders, leg, and groin area. He was taken by ambulance to a local hospital, treated, and released.

Following the accident, Hendrix worked in the Graham store while the manager was on vacation. Hendrix then returned to his route sales duties, which he continued until April 7, 1990. Hendrix's request for lighter work was denied and in a letter dated April 3, 1990, Graham's customers were informed that Hendrix was taking a medical leave of absence. After April 7, 1990, Hendrix never reported for work.

Because his condition worsened, Hendrix consulted Dr. Gail Benson (Benson), an orthopedic specialist, in December 1989. Benson diagnosed degenerative disc disease. According to Benson's deposition, Hendrix has degenerative disc disease of his lumbar spine aggravated by the accident. In March 1989, prior to the accident, Dr. Martin Christensen (Christensen), Hendrix's family doctor, had also diagnosed degenerative disc disease. Christensen had placed Hendrix on Naprosyn, an anti-inflammatory, and advised him to refrain from heavy lifting. Christensen treated Hendrix for degenerative disc disease through May 3, 1989.

In June 1990, Hendrix underwent a functional capacities assessment (FCA). The FCA showed that in an eight hour day, Hendrix could sit for 6 to 8 hours for 60 to 65 minute durations with regular breaks; that he could stand for 3 to 4 hours for 30 to 40 minute durations with regular breaks; that he could push or pull approximately 106 pounds; that he could carry 22 pounds frequently and 57 pounds occasionally, and that he could lift 26 to 33 pounds frequently and 64 pounds occasionally. As a result of the FCA, Benson opined that Hendrix was capable of working within the guidelines set forth in the FCA.

Hendrix filed a Petition for Hearing with the Department of Labor (Department) seeking worker's compensation disability benefits as a result of the September 1989 accident. Graham and The Travelers (Travelers) denied any relationship between the September 1989 accident and Hendrix's disability and asserted that Hendrix was not entitled to any benefits.

A hearing was held on December 13, 1991. Department found that the requisite causal connection existed between the accident and Hendrix's back condition and awarded Hendrix worker's compensation for medical expenses and a five percent permanent partial disability. Hendrix's claims for temporary total, temporary partial, and rehabilitation benefits were denied.

Hendrix appealed. Graham and Travelers filed a Notice of Review. The Department's finding of causation in favor of Hendrix and the denial of temporary total benefits were affirmed. The case was remanded to Department for additional findings of fact and conclusions of law on the issues of temporary partial and rehabilitation benefits. The circuit court also required Department to redetermine Hendrix's permanent partial disability benefit because it was calculated in part on the impairment of Hendrix's personal and social life.

Without taking additional evidence, Department entered further Findings of Fact and Conclusions of Law. The supplemental findings resulted in a reduction of the five percent permanent partial disability rating to four percent. Department adhered to its earlier decision and denied an award of temporary partial and rehabilitation benefits. The circuit court affirmed Department's decision. Hendrix appealed. Graham and Travelers filed a Notice of Review.

## STANDARD OF REVIEW

██ This court's standard of review of administrative appeals is clearly defined.

We will overrule an agency's findings of fact only when they are clearly erroneous. *Day v. John Morrell & Co.,* 490 N.W.2d 720, 723 (S.D.1992) (citation omitted). "The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding." *Id.* at 723–24 (citing *Lawler v. Windmill Restaurant,* 435 N.W.2d 708 (S.D.1989)). "In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some 'substantial evidence' in the record which supports the Department's determination, this court will affirm." *Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 919 (S.D.1991). *See Lawler,* 435 N.W.2d at 711 (Morgan, J., concurring specially) (quoting *Application of Ed Phillips & Sons Co.,* 86 S.D. 326, 195 N.W.2d 400 (1972)). Great weight is given to the findings made and inferences drawn by an agency on questions of fact. *Kennedy v. Hubbard Milling Co.,* 465 N.W.2d 792, 794 (S.D.1991) (citation omitted). *See Lawler,* 435 N.W.2d at 711 (Morgan, J., concurring specially). Conclusions of law are given no deference and are fully reviewable. *Day,* 490 N.W.2d at 723 (citations omitted). When reviewing evidence presented by deposition, we do not apply the clearly erroneous standard but review that testimony as though presented here for the first time. *Id.* (citations omitted). *See Foltz v. Warner Transp.,* 516 N.W.2d 338, 341 (S.D.1994).

1. **Whether Department's decision that Hendrix suffered an aggravation of a pre-existing medical condition as a result of the accident was clearly erroneous.**

Before an employee can collect benefits under our worker's compensation statutes, he must establish, among other things, that there is a causal connection between his injury and his employment. That is, the injury must have its origin in the hazard to which the employment exposed the employee while doing his work. This causation requirement does not mean that the employee must prove that his employment was the proximate, direct, or sole cause of his injury; rather, the employee must show that his employment was a contributing factor to his injury. The employee's burden of persuasion is by a preponderance of the evidence.

*Caldwell v. John Morrell & Co.,* 489 N.W.2d 353, 358 (S.D.1992) (citations omitted).

Graham and Travelers argue that Department's decision that Hendrix suffered an aggravation of a pre-existing medical condition as a result of the accident was clearly erroneous. A pre-existing medical condition or infirmity does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the condition or infirmity to produce the disability for which compensation is sought. *Guthmiller v. Dept. of Transportation,* 502 N.W.2d 586, 590 (S.D.1993) (Sabers, J., dissenting) (citing 1 Larson, *Workmen's Comp.* § 12.25.) " 'Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by [Department] based on any medical testimony ... will not be disturbed on appeal.' " *Id.*

There is no question that Hendrix has a history of low back problems for which he began receiving chiropractic treatment in May 1985. Chiropractic care continued on and off through December 1988 and in March 1989, Hendrix sought treatment from Christensen, who diagnosed degenerative joint disease and arthritis. Hendrix testified, however, that he never suffered pain to this degree prior to the accident. According to Benson's deposition, Hendrix "has degenerative disc disease of his lumbar spine aggravated by an auto accident in which it is my presumption that he has torn one of his degenerated discs in his lumbar spine." While Benson testified that he did not review Hendrix's prior medical records, he also testified that the fact that Hendrix was having back pains prior to the accident meant that he had a pre-existing disease that was aggravated by an injury which appeared to make it impossible for him to maintain his employment lifting tires during the day.

There is substantial evidence to support Department's findings. Graham and Travel-

ers have failed to demonstrate that Department's finding that Hendrix's "preexisting condition of degenerative disc disease was *aggravated* by the auto accident" was clearly erroneous. (Emphasis in Decision.)

### 2. Whether Department's Finding of Fact XXIII is clearly erroneous.

■ Department's Finding of Fact XXIII states that "Claimant offered no medical evidence that he was temporarily, totally disabled at any time since he terminated his employment in April of 1990." Hendrix argues that this Finding of Fact is clearly erroneous. In support Hendrix cites an "Attending Physician's Statement" prepared by Benson's office, Midwest Orthopedic Center. According to Hendrix, a "fair reading" of the Statement indicates that he would never be able to return to work at his job and that he should not perform "any other work" for "1–3 Mos."

According to Hendrix's testimony, however, while Benson suggested that he get out of a line of work that involved heavy lifting and driving, he was never completely restricted from work by Benson, or any other physician. Additionally, Benson testified that the Attending Physician's Statement was filled out and signed by his secretary based upon the records and that he had not reviewed the Statement.

Although there is evidence in the record with tends to contradict Department's Finding of Fact XXIII, "there is some 'substantial evidence' in the record which supports" Department's finding. *Shepherd,* 467 N.W.2d at 919. Therefore, Hendrix has failed to establish that this finding is clearly erroneous.

### 3. Whether Department erred in holding that Hendrix was not entitled to temporary disability benefits and rehabilitation benefits.

#### a. Temporary total.

■ Hendrix argues that he is entitled to temporary, total disability benefits from April 7, 1990 (his last date of employment with Graham) through June 15, 1990 (the date of the FCA). Under the odd-lot doctrine, "a person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income." *Shepherd,* 467 N.W.2d 916, 918 (S.D.1991) (quoting *Wendel v. Domestic Seed & Supply,* 446 N.W.2d 265, 270 (S.D. 1989); *Hanson v. Penrod Constr. Co.,* 425 N.W.2d 396, 398 (S.D.1988); *Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417, 418 (S.D.1982)); *Tiensvold v. Universal Transport, Inc.,* 464 N.W.2d 820, 822 (S.D.1991). The claimant has the burden to make a prima facie showing that his physical impairment, coupled with his education, training, and age place him in an odd-lot category. *Tiensvold,* 464 N.W.2d at 822. "The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant. However, the burden only shifts when a [claimant] makes a prima facie case of total disability by producing substantial evidence that [he] is not employable in the competitive market." *Id.* at 822–23.

> [I]f the claimant's physical condition, coupled with his education, training and age, make it obvious that he is in the odd-lot total disability category, the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for person with claimant's limitations. If, on the other hand, the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work.

*Shepherd,* 467 N.W.2d at 918 (citations omitted).[1]

---

1. It is normally incumbent upon an injured worker, at a hearing to determine loss of earning capacity to demonstrate a reasonable effort to secure employment in the area of residence. *Guyton v. Irving Jensen Co.,* 373 N.W.2d 101, 105 (Iowa 1985).

■ Whether the claimant made a prima facie showing that he belongs in the odd-lot total disability category is a question of fact. *Shepherd,* 467 N.W.2d at 919 (citing *Schepanovich v. United States Steel Corp.,* 669 P.2d 522, 529 (Wyo.1983)). Department concluded that Hendrix offered no medical evidence that he was temporarily, totally disabled at any time since he terminated his employment and therefore, he failed to sustain his burden of proof in regard to the claim for temporary benefits.[2]

■ Hendrix was not "obviously unemployable." While the Attending Physician's Statement advises Hendrix to consider changing to a different type of work, Hendrix testified that he was never completely restricted from work by any physician. *See Tiensvold,* 464 N.W.2d at 823 (noting that the doctor testified that Tiensvold should not return to truck driving, but never opined that Tiensvold was disabled from employment in other occupations). Therefore, the burden remained with Hendrix to show that he unsuccessfully made reasonable efforts to find work. *See Shepherd,* 467 N.W.2d at 918.

Since leaving employment with Graham, Hendrix never actually applied for a job. He never completed a job application, and his previous employer was never contacted for a reference. While Department found that Hendrix "is on file with Job Service and checks job listings on a regular basis," Rick Ostrander (Ostrander), a vocational rehabilitation counselor, testified that only 10 to 25 percent of all jobs in the Mitchell market are advertised through Job Service. Ostrander also testified that there are jobs, and have been jobs, within Hendrix's limitations in Mitchell since 1990.

. . . .

This burden may be met by a showing of diligent but unsuccessful attempts to find work or by proof that because of the above mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists. *Valley Mould & Iron Co. v. Industrial Commission,* [84 Ill.2d 538, 50 Ill. Dec. 710] 419 N.E.2d 1159 (1981).
*Tiensvold,* 464 N.W.2d at 823.

**2.** A claimant's physical condition, however, is only one of the factors to be considered in determining whether a claimant is in the odd-lot total

Hendrix failed to "demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work," *Shepherd,* 467 N.W.2d at 918, and the burden of proving the availability of regular employment within Hendrix's capabilities never shifted to Graham. Therefore, Department's determination that Hendrix failed to sustain his burden of proof in regard to the claim for temporary benefits is not clearly erroneous.

**b. Temporary partial.**

■ At the time of Hendrix's injury, SDCL 62–4–5 provided:

If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, or if he has been released by his physician from temporary total disability and has not been given a rating to which § 62–4–6 would apply, he shall receive compensation, subject to the limitations as to maximum amounts fixed in § 62–4–3, equal to one-half of the difference between the average amount which he earned before the accident, and the average amount which he is earning or able to earn in some suitable employment or business after the accident.

Under this statute, to receive temporary partial benefits, an employee must establish:

1. That he is partially incapacitated from pursuing his usual and customary line of employment due to his work related injury; or

2. That he has been released by his physician from temporary total disability

disability category. If a claimant is not "obviously unemployable," then the burden remains with the claimant to show that he unsuccessfully made reasonable efforts to find work. Department failed to determine whether Hendrix demonstrated the unavailability of suitable employment by showing that he had unsuccessfully made reasonable efforts to find work. (The trial court affirmed Department's refusal to award temporary total disability benefits and noted that it was "most telling" that Hendrix's own expert (Ostrander) said that there were other jobs available in the community within Hendrix's medical restrictions.)

and has not yet been given a permanent partial disability; and

3. That his present *average* earned income or that amount he is capable of earning at some suitable employment or business is less than what his *average* earned income was prior to his disability.

*Caldwell*, 489 N.W.2d at 363 (emphasis in original). "If the employee makes his requisite showing, then he will receive the difference between his pre- and post-injury average earning amounts, subject to the limitations set forth in SDCL 62–4–3." *Id.*

Department concluded that Hendrix made a prima facie showing of temporary partial disability in that he was partially incapacitated from pursuing his usual and customary line of employment and had not been given a rating. The Department further concluded, however, that suitable employment was and is available on a regular and continuous basis which would have resulted in a comparable wage thereby defeating Hendrix's claim for temporary partial disability benefits. Hendrix argues that this was error. Graham and Travelers respond that the evidence clearly supports the finding that Hendrix failed to establish the third requirement and therefore, he was not entitled to temporary partial disability benefits.

Hendrix presented evidence, through the testimony of Ostrander, that he is capable of earning, post-injury, approximately half of what he earned prior to his disability. *See Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548, 554 (S.D.1990) ("Since the statute refers to the amount the employee is *able* to earn, Cozine satisfied her burden under the statute by introducing evidence of what she was able to earn as a part-time summer worker and a dormitory resident assistant during the period of temporary, partial disability."). To counter Hendrix's evidence, Graham and Travelers must demonstrate that higher earnings would be regularly and continuously available to Hendrix. *Id.*

Department concluded that suitable employment was and is available to Hendrix on

a regular and continuous basis which would have resulted in a comparable wage based upon testimony by James Carroll (Carroll) of Karr Rehabilitation, who conducted a labor market survey of Mitchell, South Dakota. This conclusion was based upon Department's finding that at the time of Carroll's survey, Dakota Manufacturing and KMIT Radio had current openings offering comparable salaries.[3] Even Hendrix testified that when he contacted the employers listed on Carroll's report, "[s]ome of them indicated that they had jobs open in the past and expected some in the future[.]" Although Kevin Culhane (Culhane), president and general manager of KMIT Radio, testified by way of deposition almost one month after the hearing that while a sales position was filled in 1991, it was never advertised, and that KMIT *might* have two positions available, we cannot say that Department was clearly erroneous in denying temporary, partial disability benefits. *See Lawler*, 435 N.W.2d at 711 (Morgan, J., concurring specially) ("[G]ranted that there is testimony of Dr. Jackson that would support a view contrary to the agency decision, there is also other medical testimony, in the deposition of Dr. Sanmartin, that supports the finding of the agency. Therefore, applying the *Phillips & Sons* admonition along with the statutory directive that we give the findings and inferences of the agency great weight on questions of fact, I concur in the majority opinion.").

### c. Rehabilitation

Department denied Hendrix's claim for rehabilitation benefits because it found that suitable, substantial and gainful employment exists in the Mitchell labor market that is and has been regularly and continuously available to Hendrix. Hendrix argues that this finding is clearly erroneous.

■ Under *Cozine*, an employee must meet five requirements before receiving rehabilitation benefits:

---

3. Carroll testified that Dakota Manufacturing indicated at the time of the survey that they had two openings coming up in the immediate future and KMIT Radio had a sales position available at the time the labor market survey was conducted and at the time of the hearing.

1.  The employee must be unable to return to his usual and customary line of employment;
2.  Rehabilitation must be necessary to restore the employee to suitable, substantial, and gainful employment;
3.  The program of rehabilitation must be a reasonable means of restoring the employee to employment;
4.  The employee must file a claim with his employer requesting the benefits; and
5.  The employee must actually pursue the reasonable program of rehabilitation.

*Beckman v. John Morrell & Co.,* 462 N.W.2d 505, 507 (S.D.1990); *Cozine,* 454 N.W.2d at 553.

■ Hendrix meets the first requirement because it is undisputed that he is unable to return to his usual and customary line of employment as a route salesman of tires. *Cozine,* 454 N.W.2d at 554. As to the second requirement, Ostrander testified that there are jobs, and have been jobs, within Hendrix's limitations in Mitchell in 1990. The statute requires more than the mere restoration to employment, however. "The new employment must be suitable when compared to the employee's former job." *Id. See Beckman,* 462 N.W.2d at 508 (employment at minimal wages does not constitute suitable, substantial, and gainful employment).

The Department found, through testimony of Ostrander, that Hendrix made a prima facie showing that rehabilitation is necessary to return to suitable, substantial and gainful employment. "Just as with the odd-lot test determination of total disability, [however,] once an employee has made a prima facie showing that she is unable to find suitable employment, the employer then has the burden of establishing that the employee would be capable of finding such employment without rehabilitation." *Cozine,* 454 N.W.2d at 554.

As noted above, suitable employment was and is available to Hendrix on a regular and continuous basis which would have resulted in a comparable wage. *See Id.* (noting that the new position must restore employee to suitable employment when compared to the employee's former job and be regularly and continuously available). Therefore, Graham

and Travelers met their burden and Department was not clearly erroneous in determining that Hendrix failed to meet the second requirement that rehabilitation is necessary. *Compare Id.* ("Cozine made the necessary prima facie showing and Midwest then failed to meet its burden. The hearing examiner was clearly erroneous in determining that Cozine failed to meet the second requirement that rehabilitation is necessary.")

### 4. Whether Department erred in determining the permanent partial disability percentage.

■ Hendrix argues that Department's determination of a five percent permanent partial disability is clearly erroneous. Initially we note that the circuit court remanded the permanent partial disability determination for reconsideration in accordance with *Caldwell,* 489 N.W.2d 353, 362 (holding that a disability rating due to a "loss of use" of a body member can, under the provisions of SDCL 62–4–6, only be considered in the context of what effect it would have on the employee's income-earning capability and that any effect it has on his personal life or social life is not a relevant consideration). Upon remand, Department eliminated its consideration of Hendrix's personal and social impairment and reduced the disability rating from five to four percent. (We note that Finding of Fact LVIII states: "Claimant must limit his lifting in all aspects of his life and personally limits his driving.")

Under SDCL 62–4–6, an employee shall receive compensation for the loss of a part of the body or its loss of use. *Cozine,* 454 N.W.2d at 551. It is the responsibility of the hearing examiner to determine if, and to what extent, a claimant has suffered the loss of use of a body part, based upon the evidence as a whole. *Id.* at 551–552. "Although the medical impairment rating given by a doctor is an important factor, the extent of loss of use does not necessarily equal the extent of medical impairment." *Id.* at 552. The hearing examiner should consider other evidence, such as the testimony of a vocational expert regarding loss of employability. *Id.*

In determining permanent partial disability, Department found that Ostrander's assignment of a 65 percent loss of employabili-

ty and earning capacity was offset by the lack of an impairment rating and the fact that Hendrix was able to earn comparable wages in other positions. As noted above, it was the responsibility of the hearing examiner to determine to what extent Hendrix suffered the loss of use of a body part based upon the evidence as a whole. Suitable employment was and is available to Hendrix on a regular and continuous basis which would have resulted in a comparable wage. Hendrix has failed to demonstrate that Department was clearly erroneous in awarding permanent partial disability benefits based upon a four percent disability.[4] We affirm.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

I concur in the totality of this opinion with the exception of an obvious attempt to ingratiate already settled law by employing a quotation of the author's dissent in *Guthmiller v. Dept. of Transp.*, 502 N.W.2d 586 (S.D.1993).

The clearly erroneous rule, a scope of review announced in previous cases by this Court, was set forth in the majority opinion in *Guthmiller* (quoting *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353 (S.D.1992)).[*]

The majority writer in the case before us quotes a *portion* of his dissent in *Guthmiller*; that portion of his dissent in *Guthmiller* was actually in accord with the majority opinion in *Guthmiller* on the scope of review and previous decisions in this Court. However, it is perfectly obvious that the dissent in *Guthmiller* inappropriately weighed the evidence, at the appellate level, and determined that Guthmiller had established his case, whereas four Justices held that "Guthmiller simply failed to prove his case for the reason that his own doctors could not substantiate a causal connection between the wrist injury and his claimed diabetic neuropathy." Guthmiller was bound by his own doctor's testimony.

---

**4.** *See Caldwell*, 489 N.W.2d at 362 which states:

> Our act is designed to compensate an employee or his family for the loss of his income-earning ability which loss is occasioned by an injury, disablement, or death because of an employment-related accident, casualty, or disease. The act guarantees employees compensation irrespective of tort law considerations and in return employees forego the right to a one hundred percent recovery. Employers, on the other hand, accept responsibility for injuries they might not otherwise be responsible for at common law and in return their liability is fixed and limited. With the exception of certain items (such as medical, hospital, and burial expenses), SDCL Chapter 62–4 provides that compensation shall be paid pursuant to definite schedules. *See* SDCL 62–4–3, 4, 5, 6, 7, and 12 et seq. All of the schedules are based upon the employee's loss of wage-earning power; that is, what would the employee have expected to earn if he had not been victimized by an employment-related accident, casualty, or disease. *See* SDCL 62–4–24, 25, 26, 27, and 28. We hold that a disability rating due to a "loss of use" of a body member can, under the provisions of SDCL 62–4–6, only be considered in the context of what effect it would have on the employee's income-earning capability and that any effect it has on his personal or social life is not a relevant consideration.

* Justice Sabers joined the "clearly erroneous test" in *Day v. John Morrell & Co.*, 490 N.W.2d 720 (S.D.1992), a unanimous decision. He authored *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916 (S.D.1991), a unanimous opinion supporting the same rule.